[No. 3193.   Nov. 7, 1927.]

## HIGGINS v. CAUHAPE.

[261 Pac. 813.]

Harold Hurd, of Roswell, for appellant.

G. U. McCrary, of Artesia, for appellee.

OPINION OF THE COURT

WATSON, J.   This suit is for an unpaid balance of $800 upon an oral contract for a grazing privilege for lambing purposes for the 1923 season.   The contract was made in January of that year.   Plaintiff recovered the amount claimed, and defendant appeals.

As to the essentials, there is little dispute con-

cerning the language constituting the contract. Both parties spoke of the transaction as a "lease" of lands or of grass. They agreed that the consideration for the privilege was fixed at $1,600, of which one-half was paid at the time. According to appellant's testimony, his promise as to the balance, acquiesced in by appellee, was:

"I will pay half of it down and the other half when I move the sheep down, when I come with the sheep."

There having been sufficient rain after the making of the contract, and before the lambing season, appellant found it unnecessary to use the grass, and for that reason refused to pay the balance of the agreed consideration.

Appellant contends that by this contract he paid $800 for an option on the grass, the use of which he was entitled to for an additional $800. Clearly the language employed in the negotiations and the final agreement is inappropriate to express such an intent. But he endeavored to maintain his position by proof of surrounding circumstances, and particularly of a local custom among sheepmen. The beginning of 1923 was very dry, and there was reason to fear a shortage of grass on the sheep ranges. At such times it was customary for sheepmen to insure themselves against loss at lambing by taking options on grass; the usual consideration being one-third to one-half of the compensation agreed upon for the grazing privilege. It is unnecessary to set forth this evidence, which we have carefully reviewed. If the contract had been ambiguous, requiring resort to surrounding circumstances to ascertain its meaning, the proofs submitted might have been persuasive as to the intent of the parties. But the trial court found no ambiguity; nor do we.

Appellant contends that he succeeded in proving that such language as we have here had acquired, by custom, the meaning of an option. As to this, we need say only that we agree with the trial court in overruling the contention. The evidence was quite satisfactory to the point that sheepmen customarily took options rather than to obligate themselves definitely to use and pay for the grass. But in most instances cited the parties had expressly so agreed,

or the question had not arisen, because the grass had actually been used.

The parties were brought together by one Yates, a real estate broker. Appellant approached him first, and seems to have made it clear to him that he wanted to obtain an option on salt grass because of the then prospects for a dry season. Yates phoned appellee, and the latter agreed (quoting from appellant's brief) "to rent his salt grass pasture through Yates at the price of $2,000 for the lambing season"; and, according to custom, to pay Yates a commission. Yates then told appellant that appellee wanted $2,000. Appellant replied that that was too much. Thereupon Yates suggested that they go to appellee, and perhaps they could get it cheaper. They did so, and from that point the parties conducted the negotiations themselves, though Yates was present.

Appellant contends that the language of the contract is to be interpreted in the light of his purpose, disclosed to Yates, though not to appellee, to secure merely an option. It is his theory that, since Yates was appellee's agent, the knowledge of the former must be imputed to the latter. The court rejected this view, finding:

"Martin Yates was the agent of the plaintiff in bringing the parties together for making the contract, but the contract was made between the parties, each acting for himself."

We see no fault in this finding. If appellant had accepted appellee's proposition, made through Yates, and had dealt with the latter as appellee's agent, the case might be different. But he rejected that proposition, and thereafter negotiated directly with appellee. So Yates' agency ceased to have importance. The contract is the agreement made at the time by the parties themselves, not one which might have been, but was not, made between appellant and the agent, Yates.

The court found:

"The defendant, at the time he made the lease in question, contemplated making an option contract according to the custom among sheepmen, but failed so to express his purpose as to make an option contract."

Counsel contends that it thus appears that the minds of the parties did not meet, and hence there was no contract. This is unsound. The court was bound to look to appellant's express assent. It could not regard his secret or undisclosed intent. Having agreed to pay *when* he came with his sheep, he is bound by it, though he meant to say he would pay *if* he came. 1 Williston on Contracts, §§ 18, 20, and 22.

The court found:

"After knowledge that the defendant would not use the salt grass and declined to pay the balance of $800, the plaintiff made no effort to mitigate the damages by leasing the salt grass to other persons."

Appellant contends that, having so found, the court erred in giving judgment for the full amount of the balance. The trouble with this position is twofold: Appellant did not plead in mitigation; nor did he produce any competent evidence tending to show what amount, if any, appellee, by reasonable effort, might have realized from the grass.

Appellee has submitted a motion to dismiss the appeal and affirm the judgment for failure of the appellant to file assignment of error within the statutory time. In view of our conclusion upon the merits, the motion requires no consideration.

Finding no error, the judgment will be affirmed and the cause remanded, with direction to enter judgment against appellant and his supersedeas sureties.

It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.