**UNITED STATES of America,**
**Plaintiff,**

v.

**Herbert F. SCHAUB, C. A. Zaruba, and Wilfred C. Stump, Defendants.**

**No. A-3838-K.**

District Court, Alaska
First Division, Ketchikan.

Aug. 9, 1958.

C. Donald O'Connor, Asst. U. S. Atty., Ketchikan, Alaska, for plaintiff.

W. C. Stump, of Stump & Bailey, Ketchikan, Alaska, for defendants.

KELLY, District Judge.

This matter is before the court on a bill to quiet title to property in the Tongass National Forest which the defendants claim under a mineral entry based upon the sand and gravel on said property. The land involved includes a portion of one mining claim and an entire second claim.

The government also seeks a permanent injunction against defendants from digging and excavating upon the land involved or from interfering in any way with the use of said lands by the United States.

The important question to be decided here is whether land containing sand and gravel is subject to entry where ordinary sand and gravel only is involved.

The facts show that this claim contained very little of what is considered sand or high-grade gravel, but was of a low grade and contained many stones or rocks which had to be processed and crushed and its main use was for road building, either as a base or for use in rough concrete. There is no claim that the sand or gravel in this property was exceptional or of an extremely high grade or that it possessed any peculiar property or characteristic which would give it a special value.

The defendants claim that under certain circumstances sand and gravel could support a mineral entry.

This Court holds that the mineral entries of the defendants are valid and that the relief sought by the government must be denied.

The decisions of the Land Department, supplemented by judicial interpretations of the Act of 1872, have failed to set forth a clear and consistent formula as to what may be considered as mineral within the meaning of the mining laws. To this extent no real precedent has been established as to the scope of mineral as embraced in the mining statutes. Anchorage Sand & Gravel Co., Inc., v. Schubert, D.C.Alaska 1953, 114 F.Supp. 436. The several statutes dealing with mineral lands should be considered in relation to one another so as to effect the proper intent of Congress in the regulation of use and occupation of mineral lands. United States v. Sweet, 1918, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473. Any determination as to the question whether sand and gravel may be considered as mineral within the purview of the mining laws must be made in consideration of the entire statutory scheme.

By virtue of the Act of July 26, 1866, c. 262, 14 Stat. 251, Congress provided for the first statutory sanction of appropriation of public mineral lands for private use. This statute was superseded by the Act of May 10, 1872, c. 152, 17 Stat. 91, 30 U.S.C. Sec. 22, which was designed primarily to encourage mining, and which provided that:

"Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

The first test for the determination of what is to be considered as mineral within the meaning of the above statute was set forth in a circular of instructions issued by the Commissioner of Land Department in 1873. 1 Lindley on Mines 163 (3rd ed. 1914). The test was:

"* * * whatever is recognized as a mineral by the standard authorities on the subject, where the same is found in quantities and quality to render the land sought to be patented more valuable on this account than for the purposes of agriculture, should be treated by the office as coming within the purview of the mining act of May 10, 1872."

Under earliest decisions of the Land Department, it appears that gypsum, limestone, marble, alluvial deposits, gravelly soil and granite were considered as minerals within the purview of the Act of 1872. W. H. Hooper, 1 L.D. 560 (1881); H. P. Bennet, Jr., 3 L.D. 116 (1884). It is significant to note that the valuation test of minerals was not in their use, but was limited solely to the consideration of whether the land was more valuable because of their presence than for agriculture. In applying this test, it was decided in Freezer v. Sweeney, 1889, 8 Mont. 508, 21 P. 20, that stone deposits suitable for building purposes would subject such deposits to application of the mining laws.

The Land Department saw fit to deny some claims that were based on stone deposits useful for building purposes only, although previous opinions indicate that the Land Department was disposed to uphold claims where the land was more valuable because of stone deposits than for agriculture, without reference to building purposes or any other use. Conlin v. Kelly, 12 L.D. 1 (1891). Minerals are not limited solely to metalliferous substances. Mullan v. United States, 1886, 118 U.S. 271, 6 S.Ct. 1041, 30 L. Ed. 170; Northern Pacific Railway v.

Soderberg, 1903, 188 U.S. 526, 23 S.Ct. 365, 47 L.Ed. 575.

The Land Department refused to uphold a claim based on sand and gravel deposits useful only for construction purposes. Zimmerman v. Brunson, 39 L.D. 310 (1910). Yet, prior and subsequent to the Zimmerman decision, the Land Department did recognize claims founded on stone deposits that could be used for special purposes, such as monumental or ornamental, as distinguished from purely building purposes. McGlenn v. Wienbroeer, 15 L.D. 370 (1892); Van Doren v. Plested, 16 L.D. 508 (1893); Bennett et al. v. Moll, 41 L.D. 584 (1912); Stephen E. Day, Jr., et al., 50 L.D. 489 (1924).

Following the Zimmerman case the Land Department reversed itself, stating in Layman et al. v. Ellis, 52 L.D. 714, 721 (1929), that:

> "There is no logical reason in view of the latest expressions of the department why, in the administration of the Federal mining laws, any discrimination should be made between gravel and stone of other kinds, which are used for practically the same or similar purposes, where the former as well as the latter can be extracted, removed and marketed at a profit."

In a Solicitor's Opinion in 54 I.D. 294 (1933), the Land Department was advised that gravel deposits useful for highway construction would be subject to the application of the mining laws. In United States v. Barngrover, 57 I.D. 533 (1942), the test was again repeated that any substance that could be removed from the earth and marketed at a profit so as to have a positive commercial value, would be within the statutory concept of mineral. Other decisions, though not involving interpretations of the Act of 1872, have held gravel to be a mineral. United States v. Harris, 5 Cir., 1940, 115 F.2d 343; Praeletorian Diamond Oil Ass'n v. Garvey, Tex.Civ. App. 1929, 15 S.W.2d 698.

■■ It appears that Congress had in mind that all lands valuable for stone shall be included within the purview of the mining laws. By the Act of August 4, 1892, c. 375, 27 Stat. 348, 30 U.S.C. Sec. 161, Congress enlarged the scope of the mining laws, so as to make entry for building stone possible under provisions of the Act of 1872. There seems to be no doubt that Congress intended the coverage of the mining laws to be broad enough to permit gravel and sand to be the basis of a claim under the mining laws as a valuable mineral deposit. Additional support for this view is found in the passage of the Act of July 23, 1955, c. 375, Sec. 3, 69 Stat. 367, 30 U.S.C. Sec. 611, expressly exempting common varieties of sand and gravel from provisions of the mining laws. The purpose of this section was to amend the Act of July 31, 1947, 61 Stat. 681, and the mining laws generally, so as to prohibit the further location and removal of sand and gravel from the mineral lands of the United States. See H.Rep. 730, U.S.Code Congressional and Administrative News, p. 2474 (1955). Impliedly, this section acknowledges that prior to the passage of the Act of 1955, common varieties of sand and gravel were subject to provisions of the Act of 1872. The claims here involved were located June 27, 1951, four years prior to this amendment.

Although the sand and gravel located by the defendants may be of a coarse variety, there is nothing explicit or implicit within the mining statutes requiring mineral deposits to be useful for special purposes. Sand and gravel of the type sought to be located by the defendants is relatively scarce in Alaska, and being such, are items of value in themselves. Their property characteristics are far more suitable for building purposes than the type to be found close to or on the coast, due to chemical composition of coastal substances. In this sense, the sand and gravel in question is of a superior type. There is no doubt that the land containing the sand and gravel was greatly appreciated in value attributable to its presence. No reason can be found to exist to warrant a dis-

tinguishing of gravel from other deposits used for a similar purpose which the Land Department has consistently upheld as being within the purview of the Act of 1872. The statute makes express reference to "valuable mineral deposits." The use of such deposits and their demand are helpful only so far as they determine valuation. Mineral deposits may be just as valuable for one purpose as another, and because a deposit may be limited in its use only for one purpose, there is no reason to deny application of the Act of 1872 if the deposit is valuable and can be marketed at a profit. There is no dispute that the sand and gravel were chiefly valuable for road building and concrete mix. But, if the lands containing these deposits were as valuable and yielded profits comparable to lands containing high-grade sand suitable for glass-making, and the latter would come within the Act of 1872, no distinction can be conceived that would justify a different result.

At the time of the passage of the Act of 1872, a great deal of the lands were unexplored. It would be a far stretch of the imagination to assume that Congress intended to limit the mining laws only to those minerals known to possess a great value at the time the statute was enacted, where the express intent of Congress was to develop the mining resources of the United States, so as to give value to a greater number of things in the promotion of manufacturing and the arts. To stimulate the growth of our country, Congress encouraged mining activities, and in doing so, intended that substances that can be taken from the earth and marketed at a profit, be subject to the application of the mining laws.

Therefore, under the mining laws in effect when the entry herein was made, such entry was valid and the government's claims should be denied.

The foregoing shall constitute Findings of Fact and Conclusions of Law unless the parties desire additional Findings or Conclusions.

Defendants will present proper orders and decree in accord with this opinion.