## MATTHEWS v. DEPARTMENT OF CONSERVATION.

1. MINES AND MINERALS—RESERVATIONS—STATES—CONSTRUCTION OF AMENDATORY STATUTES.

    Amendment of statute so as to empower a State agency to sell nonmetallic minerals that were reserved to the State when lands were sold to private parties effected a power of sale not theretofore possessed by the agency and did not operate to constitute a legislative construction of the statute being amended that the agency did not theretofore have the power to reserve such minerals as well as metallic minerals as to which the power to sell was unquestioned (PA 1909, No 280, § 12, as amended by PA 1917, No 262 and PA 1929, No 320).

2. SAME—DEEDS—RESERVATIONS—REMOVAL OF GRAVEL.

    Deed of State-owned land to plaintiffs reserved to State the right to remove gravel therefrom, where deed reserved to State "all mineral * * * within or under the said lands hereby conveyed," notwithstanding such deed omitted an explanatory clause that had been contained in plaintiffs' offer to purchase that "mineral rights include sand and gravel" and they had paid $60 for 40-acre tract, stating in application to purchase that their purpose was to use it for cattle pasturage (PA 1909, No 280, § 12, as amended by PA 1917, No 262 and PA 1929, No 320).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 36 Am Jur, Mines and Minerals § 24.
[3] 44 Am Jur, Quieting Title § 98.

3. COSTS — PUBLIC QUESTION — STATES — DEEDS — RESERVATIONS —
   GRAVEL.
   No costs are allowed in suit to quiet title to gravel in land
   deeded by State to plaintiffs by deed reserving all minerals,
   a public question being involved (PA 1909, No 280, § 12, as
   amended by PA 1917, No 262 and PA 1929, No 320).

Appeal from Roscommon; Shaffer (John C.), J.
Submitted November 24, 1958. (Docket No. 77,
Calendar No. 47,742.) Decided April 13, 1959.

Bill by Howard E. Matthews and Rose E. Mat-
thews against the Department of Conservation of
the State of Michigan to quiet title and establish
right to gravel deposits. Cross bill for similar pur-
poses and for damages. Decree for plaintiff. De-
fendant appeals. Reversed and remanded for entry
of decree.

*Glenn C. Gillespie,* for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J.
Torina,* Solicitor General, *Nicholas V. Olds* and
*Fredric S. Abood,* Assistant Attorney General, for
defendant.

SMITH, J. This appeal arises out of a bill filed by
plaintiffs, husband and wife, to quiet title to property
deeded them by the department of conservation
(hereinafter referred to as the department). The
facts are not in dispute. The primary question for
our determination is whether the word "mineral" as
employed in the deed before us includes within its
meaning sand and gravel. The purchaser says it
does not. The State (seller) says it does.

On November 25, 1938, plaintiff Howard E.
Matthews made an offer to the department, on a
printed form supplied by the latter, for the purchase
of a 40-acre tract of land owned by the State and ad-

joining his 560-acre farm. We will call this the "offer of purchase." It contained a provision stating that any deed issued "upon the above application" would contain a reservation to the State of all minerals pursuant to PA 1909, No 280, § 8 and, in addition, it quoted the substance of the reservation clause that would be inserted in the deed.* Immediately following the quoted reservation clause in the offer of purchase, was an explanatory clause, in parentheses, stating that "Mineral rights include sand and gravel." Plaintiff offered to pay $60 for the total 40 acres and, in response to a question in the application regarding the purposes for which the land was desired, stated that it was to be used for cattle pasturage. The department accepted this offer and a deed was accordingly executed.

The deed as executed and delivered, however, although containing the quoted reservation clause, did not redefine "mineral rights" in the terms of the offer. Plaintiff testified he had read the explanatory parenthetical clause in the offer of purchase, and, finding it missing in the deed, assumed the department had "just dropped it" and did not intend to reserve sand and gravel. The department, however, both before and after the time of this deed, has construed the quoted reservation clause to include sand and gravel.

The land to which plaintiffs received their deed was somewhat hilly and rolling in character, cov-

---

* "SAVING and excepting out of this conveyance and always *reserving unto the said State of Michigan, all mineral, coal, oil and gas, lying and being on, within or under the said lands* hereby conveyed, with full and free liberty and power to the said State of Michigan, its duly authorized officers, representatives and assigns, and its or their lessees, agents and workmen, and all other persons by its or their authority or permission, whether already given or hereafter to be given, at any time and from time to time, to enter upon said lands and take all usual, necessary or convenient means for exploring, mining, working, piping, getting, laying up, storing, dressing, making merchantable, and taking away the said mineral, coal, oil and gas, pursuant to the provisions of PA 1909, No 280, § 8."

ered with second growth, patches of grass, clover and small scattering timber. The topsoil in parts was mostly gravel and, overall, the parcel was "pretty thin" pasture land. There was a small gravel pit on the land and subsequent to the issuance of the deed, plaintiffs and neighbors from time to time took small quantities of gravel from the premises. Between 1948 and 1952, plaintiffs, in addition, sold 54,000 cubic yards of gravel, in part to the Roscommon county road commission and in part to a private contractor who apparently resold to various road commissions. This gravel was "strip-mined" from the surface of the land leaving about a 10-foot excavation over approximately 6 acres and rendering that part of the 40-acres useless for grazing or farming. Upon discovery of the sale of this gravel, the department notified plaintiffs of the alleged trespass and breach of the reservation clause. Plaintiffs initially confessed their mistake and offered restitution. However, negotiations eventually failed and plaintiffs filed a bill praying a decree that they were the "lawful owner of all gravel on the premises" and that their title to such premises be quieted. The department filed a cross bill, praying that decree quiet its "ownership of all minerals" and also asking damages for gravel sold. The circuit court for the county of Roscommon entered the decree requested by plaintiffs and the department has appealed.

Two basic questions are raised upon this appeal. The first is whether the department had the statutory power to reserve sand and gravel when selling State lands for agricultural purposes. If the department is found to have such power, a further question is presented, namely, whether the wording of the reservation clause in the deed as issued by the department was in fact sufficient to reserve sand and gravel. The court below found in favor of plaintiffs and decree was entered accordingly.

As the deed recites, the mineral reservation clause was inserted "pursuant to the provisions of PA 1909, No 280, § 12, as amended" (CL 1948, § 322.212 [Stat Ann 1958 Rev § 13.441]). This act created the public domain commission, the powers and duties of which have been transferred to the department of conservation. CLS 1956, § 299.2 (Stat Ann 1958 Rev § 13.2). Section 7 of the act before us authorized the commission to sell State-owned land, while section 8 enumerated the reservations the commission was required to place in all deeds. By PA 1911, No 294, section 7 became section 11, and section 8, without change in language, became section 12. Section 12 read as follows:

"When any sales are made by and under the direction of the commission the deeds by which said lands are conveyed shall reserve *all mineral, coal, oil and gas rights* to the State and said rights shall be owned by the State; but said commission shall have power to make contracts with private individuals or corporations for taking ore, coal, gas or oil from said lands upon a royalty basis upon such terms as to said commission may be deemed just and equitable. Said commission shall also have power to provide that all deeds issued for lands along watercourses or streams shall contain a clause reserving the rights of ingress and egress over and across said lands." (Emphasis supplied.)

The next amendment, for our purposes, was the amendment of section 12, by PA 1917, No 262, with the addition of the clause:

"*Provided further,* That the public domain commission is hereby authorized to sell the limestone, sand, gravel or other nonmetallic minerals."

The final amendment, by PA 1929, No 320, changed the words "shall reserve" to the permissive "may reserve" and added:

*"Provided further,* That the commission is also authorized to sell all reserved mineral, coal, oil and gas rights to such lands upon such terms and conditions as the commission may deem proper. The owner of such lands as shown by the records shall be given priority in case the commission shall authorize any sale of such lands and unless he shall waive such rights, the commission shall not sell such rights to any other person."

Plaintiffs argue that the words "may reserve all mineral * * * rights to the State" allow the department to reserve only "metallic" mineral rights, pointing to the 1917 amendment (empowering the department to sell limestone, sand, gravel and other nonmetallic minerals) as substantiating their position. Such amendment, they urge, has no relation to reserved mineral rights but, rather, is intended merely to give the department authority to sell nonmetallic minerals found on lands that are still State owned. Such interpretation would be the more persuasive if the amendment had been to section 11, concerning "sales" of State land rather than to section 12, which specified the "reservations" to be made upon sale. In other words, the thrust of section 12 is to the rights a State agency may *reserve* to the State, and, of having so reserved, how that agency may then deal with such *reserved* rights.

For the purposes of this case, the function of the 1917 amendment is twofold. First, it served to fill what was felt to be a gap in the public domain commission's powers. Under the 1909 and 1911 acts, although the State retained ownership of all the mineral, coal, oil and gas, the commission was allowed to sell only certain of these, *i.e.,* "ore, coal, gas or oil." Here the word "ore" evidently referred to metallic minerals. In 1917 the commission obtained requisite statutory power to sell the remaining reserved minerals, those nonmetallic in compo-

sition. The 1917 amendment clearly shows that the original legislative use of the word "mineral" encompassed both metallic and nonmetallic minerals, and it classifies sand, gravel, and limestone, as "nonmetallic minerals." Such amendment, it will be observed, merely permits the commission, acting for the fee owner of the lands which were to be sold under the provisions of this act, to exercise (with respect to such minerals) the rights enjoyed by any other owner in fee, reserving such interests as might seem desirable under the circumstances. *Cf., Krench* v. *State of Michigan,* 277 Mich 168.

However, plaintiffs' next assert that (even with statutory power to reserve sand and gravel in the department) such reservation was in truth not made, since the parenthetical clause was omitted from the deed. The department argues that such substances are included within the word "mineral" as employed in the deed, which reserves to the State "all mineral, coal, oil and gas, lying and being on, within or under the said lands hereby conveyed  *  *  *  pursuant to the provisions of PA 1909, No 280, § 12, as amended."

The word "mineral" has a wealth of meanings. If we divide all earthly matter into animal, mineral, and vegetable kingdoms, the place of sand and gravel. is obvious. Equally obvious it is that these substances are not mineral in the same sense as gold-bearing quartz. In the instrument before us, the word is used in a limited context. The scope of the mineral reservation is expressly made. dependent upon a particular statute, which, as we have seen, classifies sand and gravel as nonmetallic minerals. The legislature made specific that which in general speech is obscure. When construed in light of the statute, the deed necessarily reserves sand and gravel to the State. Indeed, this is the very construction the parties themselves gave to the reserva-

tion. They were laboring under no mistake during the negotiation of the deed, for nothing was left to mistake. The offer plainly stated, "Mineral rights include sand and gravel."

Reversed and remanded for entry of decree in accordance herewith. No costs, a public question.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.