382 P.2d 717

Frank BOYLIN, Maurice Greenberg, Lewis (Louis) Shur, Mabel Parsley, Administratrix of the Estate of Jack Parsley, Deceased, Kelsey Boltz, and Max Kamiel, Plaintiffs-Appellants,

v.

UNITED WESTERN MINERALS COMPANY, San Jacinto Petroleum Corporation, White, Weld & Company, J. H. Whitney & Company, Swan Finch Oil Corporation, Defendants-Appellees.

No. 7220.

Supreme Court of New Mexico.

June 10, 1963.

Chavez & Cowper, Belen, for appellants.

McKenna & Sommer, Santa Fe, for appellees United Western Minerals Co., San Jacinto Petroleum Corp., White, Weld & Co., J. H. Whitney & Co.

COMPTON, Chief Justice.

This is an appeal from a summary judgment in favor of appellees, defendants below.

The action is for an accounting and for the payment of accrued royalties. The appellants alleged in their complaint that appellees had acquired by assignment certain mining claims in McKinley County burdened with the payment of royalties to appellants which had not been paid. Motions to dismiss were filed on behalf of the various appellees. The court, after examination of the stipulations, affidavits and exhibits of record made a part of the motions to dismiss, viewed the motions as one for summary judgment which it granted appellees on the ground that there did not exist a genuine issue as to any material fact. This appeal follows.

It was stipulated that the chain of title in appellees grew out of a basic mining lease which provided that the total maximum royalties to be paid on all claims covered should not exceed 15%. The basic mining lease was executed between the owners of the property, the Cospers, assigned to the Kings, by the Kings to one Parsley, by Parsley to the Colamer Corporation, and by Colamer Corporation to the appellees. It was also stipulated that the royalties claimed by appellants were from past production from two of the mining claims, State Nos. 7 and 8, the only claims from which ore was produced.

We summarize the record. At the time of the assignment to Colamer Corporation, the claims were burdened with 10% royalties. Thereafter Colamer Corporation entered into a contract with the United States under the Defense Minerals Exploration Administration, for the exploration and development of the claims, which contract provided for a lien on a 5% "percentage royalty" to the United States until such time as the monies advanced by it had been repaid. Subsequent to the DMEA contract, but prior to the assignment and conveyance by Colamer Corporation to appellees, the appellants, being the stockholders of Colamer Corporation, transferred all of the stock of that corporation, or sold the corporation so to speak, to Swan Finch Corporation by a letter agreement which listed claims State Nos. 7 and 8 as being subject to a 10% royalty and provided that the difference between 15% and the royalties payable as listed was payable to the appellants as ore payments in accordance with the percentages listed opposite their names therein. By this letter agreement Swan Finch agreed to complete insofar as possible the outstanding DMEA contracts, but payment to the United States under these contracts was not set forth nor the 5% percentage royalties called for under the DMEA contracts specifically mentioned as

included in the royalties to which the various claims were subject.

Appellants contend that the 5% royalty payable to the government was never considered, nor intended to be considered, a royalty within the maximum royalty limitation in the basic mining lease.

 Whatever may have been the intentions of the parties to the letter agreement referred to above, a determination as to what obligations were assumed by, or imposed upon, appellees under the assignment and conveyance to them of the mining claims by Colamer Corporation is decisive here. We think this issue is resolved by a construction of the instrument itself. The assignment and conveyance provides that the assigned properties are those fully described in Exhibit A attached to and made a part thereof, and are assigned and conveyed subject only to the net profits interest therein reserved and to the various royalty interests particularly described in Exhibit A. Exhibit A, paragraph 1, specifically describes the claims assigned. With respect to State Nos. 7 and 8, it states:

"The following named Federal lode mining claims located in McKinley County, New Mexico, and covering the west 4,500 feet of Section 8 in Township 13 North, Range 9 West, N.M. P.M.:

"State Nos. 1–27.

"All of the foregoing Federal lode mining claims located in said Section 8 are *subject, however,* to a five per cent royalty payable to the Defense Minerals Exploration Administration until the sum of Eighty Five Thousand Eight Hundred Twenty-Two Dollars and Eighty-Eight Cents has been paid."

Thereafter, still under paragraph 1, Exhibit A provides that all of the claims are subject to the following additional conditions, exceptions and reservations:

"D. State Nos. 7, 8, 16, 17 and 25 are subject to a royalty of 10% and the terms and conditions contained in the lease from Lee Roy Cosper and Jane Hyde Cosper to Thomas C. King dated April 5, 1954, * * * and the assignment of this lease from Thomas C. King and Phyllis J. King to Jack H. Parsley dated August 25, 1954, * *."

Viewing the language of paragraph 1, Exhibit A, as a whole, we think it clear and unambiguous that State Nos. 7 and 8 were burdened with total royalty payments of 15%, the maximum royalty allowed under the basic mining lease, by which appellees were expressly bound.

Appellants contend, however, that by virtue of the "Addendum to Exhibit A," in which reference is made to their letter agreement with Swan Finch, that appellees were aware that the 5% royalty to the United States was not to be considered a

"royalty" under the maximum royalty limitation in the basic mining lease, and thus recognized appellants' rights to the increased royalties. The addendum to Exhibit A reads as follows:

"Except as to paragraph 2A all recitals of royalties in the Exhibit A that are less than 15% were increased to the total of 15% by virtue of a certain agreement dated between Swan-Finch Oil Corporation and Maurice Greenberg and others.

"By virtue of this agreement Mr. Greenberg and his associates [appellants] sold Colamer Corporation to Swan-Finch Corporation and one of the provisions in such agreement was the reservation to themselves of the increased royalties to which reference is made above. Such royalties were reserved in definitive form in an exhibit, a portion of which reads as follows:

"The difference between 15% and the royalties payable as set forth above (herein called the 'ore payments') is payable to the following in accordance with the percentages listed opposite their respective names:

[names and percentages of appellants omitted]

"Such ore payment is payable until the above six mentioned persons have received in the aggregate $900,000."

We think it is clear from the addendum itself that only as to those claims, not otherwise specifically excepted, which are burdened with a total royalty of less than 15%, could appellants assert their right to a royalty or ore payment. Although all of the claims in the "State" group, as previously set forth, were subject "to a five per cent royalty payable to the Defense Minerals Exploration Administration," Exhibit A specifically enumerates other claims in that group which were subject to a total royalty of less than 15%. Unfortunately for the appellants none of these claims produced.

Whether the reservation of an increased royalty or ore payment by appellants in their letter agreement with Swan Finch, and to which reference was made in the addendum to Exhibit A of the assignment and conveyance to appellees, may have become operative at a later date upon the termination of payments under the DMEA contracts, is not before us in view of the stipulation that the production from State Nos. 7 and 8 terminated prior to this action, and that the United States had not been repaid for its contributions under the DMEA contract at the time the production terminated.

■■ We think the assignment and conveyance to appellees is clear and unambiguous. We find nothing therein that would require a determination that the use of the word "royalty" in one instance varies in meaning from its use in another instance

in the same instrument. If such was intended it could have been so expressed. The terms of the agreement as written being clear, the intent must be ascertained from the language used. Ashley v. Fearn, 64 N.M. 51, 323 P.2d 1093; Davis v. Merrick, 66 N.M. 226, 345 P.2d 1042 and Jernigan v. New Amsterdam Casualty Company, 69 N.M. 336, 367 P.2d 519.

It follows that since claims Nos. 7 and 8 were burdened with a total royalty of 15%, the maximum allowed under the basic mining lease, appellants' position cannot be sustained. The judgment should be affirmed, and it is so ordered.

CARMODY and MOISE, JJ., concur.