576 P.2d 285

Robert E. RICKELTON, Marilyn Rickelton Whitman, Frank Palmer and his wife, Irene Palmer, Miles S. Palmer and his wife, Verdell Palmer, J. A. Palmer and his wife, Dorothy Palmer, Plaintiffs-Appellees,

v.

UNIVERSAL CONSTRUCTORS, INC., Defendant-Appellee,

The Commissioner of Public Lands, Defendant-Appellant.

No. 11406.

Supreme Court of New Mexico.

March 10, 1978.

Rehearing Denied March 30, 1978.

William O. Jordan, Santa Fe, for appellant.

Palmer & Frost, Reed L. Frost, Farmington, for plaintiffs.

Sutin, Thayer & Browne, Norman S. Thayer, Albuquerque, for defendant-appellee.

OPINION

FEDERICI, Justice.

Plaintiffs-appellees Rickelton, et al. (Rickelton), pursuant to § 7–8–68, N.M.S.A. 1953 (Repl. 1974), initiated a contest before the defendant Commissioner of Public Lands (Commissioner), asking that the Commissioner cancel certain sand and gravel leases issued to the defendant Universal Constructors, Inc. (Universal). The sand and gravel leases covered the same state trust lands previously conveyed to the plaintiffs by land patent. The patent reserved to the grantor (State of New Mexico) "all of the minerals of whatsoever kind, including oil and gas," together with the right to the use of the surface to explore for and remove the same. Thereafter, Universal filed an answer and, pursuant to § 7–8–8, N.M.S.A. 1953 (Repl. 1974), the Commissioner issued a "show cause order" directing Universal to show cause why the sand and gravel leases should not be cancelled as having been issued without authority of law. A hearing was held at which time oral testimony and documentary

evidence were submitted. The Commissioner made findings of fact and conclusions of law and rendered a decision denying the plaintiffs' requested relief with one minor exception. The Commissioner determined that sand and gravel were minerals reserved to the State under the mineral reservations in the patent, and that the sand and gravel leases were valid.

Thereafter, the plaintiffs appealed the Commissioner's decision to the district court pursuant to §§ 7–8–71 and 7–8–72, N.M. S.A. 1953 (Repl. 1974), whereupon the Commissioner sent to the district court a complete transcript and record of the proceedings below. No additional evidence was submitted, and the case was tried on the administrative hearing record. On February 3, 1977, the district court reversed the Commissioner's finding that the sand and gravel were minerals within the reservation in the granting patent.

The Commissioner appeals the decision of the district court. We affirm the district court.

There is only one issue to be determined: Are sand and gravel minerals as contemplated under the grantor's mineral reservation in the conveying patent?

The mineral reservation reads:

Now, therefore, know ye, that the State of New Mexico, by its Commissioner of Public Lands, its duly authorized officer according to law, does hereby Grant, Bargain, Sell, and Convey unto the said Robert D. Garland, Frank Palmer, Miles S. Palmer and J. A. Palmer and to their heirs and assigns, the said tract of land above described, subject to valid, existing rights, easements, rights of way, and reservations, and *reserving also to the State of New Mexico all minerals of whatsoever kind*, including oil and gas, in the lands so granted, and to it, or persons authorized by it, the right to prospect for, mine, produce and remove the same, and perform any and all acts necessary in connection therewith. . . . (Emphasis added.)

What the Legislature meant to be included as a "mineral" is not well defined in New Mexico. In *State ex rel. State Highway Commission v. Trujillo*, 82 N.M. 694, 487 P.2d 122 (1971), this Court recognized that the category of "minerals" is a flexible one, and quoted with approval the following language from *Bumpus v. United States*, 325 F.2d 264, 266 (10th Cir. 1963):

"Mineral" is a word of general language, and not per se a term of art. It does not have a definite meaning. It is used in many senses. It is not capable of a definition of universal application, but is susceptible to limitation or expansion according to the intention with which it is used in the *particular instrument or statute.* Regard must be had to the language of the instrument in which it occurs, the relative position of the parties interested and the substance of the transaction which the instrument embodies. (Footnotes omitted.)

In *Trujillo, supra*, this Court concluded that sand and gravel taken from the surface was not a mineral.

The material which we are considering had no rare or exceptional character and possessed no peculiar property giving it special value. It seems useful only for road building purposes, and moreover it was stipulated to have been taken in its exposed state. Although courts have reached differing results in arriving at the judicially ascertained intent of reservation clauses such as the one before us, we are of the opinion that under the circumstances of this case the reservation of coal and other minerals was not intended to include rock.

*Trujillo, id* at 696, 487 P.2d at 124.

In *Burris v. State ex rel. State Highway Commission*, 88 N.M. 146, 538 P.2d 418 (1975), this Court held by implication that sand and gravel were minerals under a mineral reservation using language similar to that in the mineral reservation in the present case; however, *Burris* is distinguishable from *Trujillo*. The crucial distinction is the specific agreement to exclude sand and gravel as a mineral in the original "Application to Purchase" filed by the appellants in *Burris*.

*Burris* stands for a completely different proposition and set of circumstances than those found in *Trujillo*, and in this case. This Court in *Burris*, said:

In fact, in the application for the tract in 1964, the "Application to Purchase" contained the following statement by Mr. Burris:

"I further state that the land applied for herein is essentially non-mineral land, and that this application is not made for the purpose of obtaining title to mineral, including but not limited to caliche, *sand and gravel,* coal, oil or gas lands fraudulently but with the sole object of obtaining title to the surface of the land applied for." (Emphasis supplied.) . . .

For example, in *State ex rel. State Highway Commission v. Trujillo,* 82 N.M. 694, 487 P.2d 122 (1971), heavily relied upon by Burris, the only writing of this sort before us, in addition to the statute, was the patent, which simply reserved to the United States "all the coal and other minerals in the lands * * *." For the reasons stated in that opinion, we concluded that sand and gravel were not minerals in that factual context.

In contrast with *State ex rel. State Highway Commission v. Trujillo, supra,* a great deal more documentation, casting light on the intention of the parties, is before us here. Not only the patent, but also the "Application to Purchase" and the contracts, lead us to conclude that this case is readily distinguishable from *Trujillo.*

*Burris, id* at 147, 538 P.2d at 419.

We believe that the case before us is controlled by the *Trujillo* case, and that a careful reading of *Burris* supports the result reached by us in this case.

For cases in other jurisdictions which support the view expressed by this Court in this opinion *see: Bumpus v. United States, supra; Resler v. Rogers,* 272 Minn. 502, 139 N.W.2d 379 (1965); *San Jacinto Sand Co.,*

*Inc. v. Southwestern Bell Tel. Co.,* 426 S.W.2d 338 (Tex.Civ.App.1968), U.S. *cert. denied,* 393 U.S. 1027, 89 S.Ct. 622, 21 L.Ed.2d 570 (1968); *Annot.,* 95 A.L.R.2d 843 at 849, 854 and 865 (1964); A.L.R.2d, Later Case Service, Supplementing 92–100 A.L. R.2d at 248 et seq. (1976).

■ Whether sand and gravel are "minerals" as that term is used in a mineral reservation or grant depends upon the specific facts in each case. It would be an exercise in futility to attempt to reconcile the various conclusions reached in other jurisdictions. We are satisfied that the trial court was correct in concluding that under the facts in this case sand and gravel of the quality which they possessed here were not minerals, considering the statutes applicable thereto, the mineral reservation as expressed and the commonly understood meaning of the word, "minerals."

The decision of the trial court is affirmed.

IT IS SO ORDERED.

SOSA and PAYNE, JJ., concur.

McMANUS, C. J., dissenting.

EASLEY, J., dissenting.

McMANUS, Chief Justice, respectfully dissenting.

The background of this case is related in the majority opinion. There is only one issue to be determined; are sand and gravel minerals as contemplated under the grantor's mineral reservation in the conveying patent?

In construing a written instrument, it is the function of the judicial process to reach the sense of the words used; giving effect to the ordinary meaning of the language within the four corners of the instrument.[1]

The language of the mineral reservation is clear from a reading of the pertinent part of the whole instrument conveying the land to the original grantees. The mineral reservation reserves in unambiguous and all-

---

1. 3 American Law of Property § 12,89 (Casner ed. 1952). *See also,* 9 Wigmore, Evidence §§ 2461–63 (3d ed. 1940).

inclusive language, without qualification, restriction, or limitation of any kind. *See, Burris v. State ex rel. State Highway Commission,* 88 N.M. 146, 538 P.2d 418 (1975). The reservation reads:

. . . Now, therefore, Know ye, that the State of New Mexico, by its Commissioner of Public Lands, its duly authorized officer according to law, does hereby Grant, Bargain, Sell, and Convey unto the said Robert D. Garland, Frank Palmer, Miles S. Palmer, and J. A. Palmer and tö their heirs and assigns, the said trust of lands above described, subject to valid existing rights, easements, rights of way, and reservations, and *reserving also to the State of New Mexico all minerals of whatsoever kind,* including oil and gas, in the lands so granted, and to it, or persons authorized by it, the right to prospect for, mine, produce and remove the same, and perform any and all acts necessary in connection therewith. . . . (Emphasis added.)

In New Mexico the intent of the parties to a written contract is to be determined from the language in the contract where the words are clear and unambiguous.[2] That we must rely on the clear terms of the contract as written is well settled in New Mexico. *Boylin v. United Western Minerals Company,* 72 N.M. 242, 382 P.2d 717 (1963). The language in the patent reserving the mineral interest to the State is clear and explicit: "all minerals of whatsoever kind." We do not need to explore the intent of the words of the grantor in creating the reservation; the words were unambiguous and do not leave any margin for interpretation. We conclude that *all* minerals are included in the reservation.

The district court, in reversing the Commissioner's finding that the material removed was sand and gravel, held that there was not sufficient evidence to support the Commissioner's conclusions. In construing the meaning of the words in a written contract they are to be interpreted according to their ordinary and common usage, unless there is evidence of an intent by the parties that they be afforded a different interpretation. (See footnote one.) Webster's Third New International Dictionary, G. & C. Merriam Co., ed. 1961, defines gravel as:

2 a: loose or unconsolidated material consisting wholly or chiefly of rounded fragments of rock ranging in size from *2 millimeters to a meter* or more in diameter—compare CONGLOMERATE, SAND. b: a stratum of such material or a surface (as of a walk) covered with such material. (Emphasis added.)

Expressed in the English standards of measures the diameters of rock as gravel would include rock of approximately one inch to three feet or more. Evidence from the hearing before the Commissioner showed the rock mined by Universal to be from particles of sand up to fourteen inches or more, well within the limits for gravel in ordinary usage. We conclude the rock quarried was sand and gravel in its ordinary and familiar meaning.

The district court relied on *State ex rel. State Highway Commission v. Trujillo,* 82 N.M. 694, 487 P.2d 122 (1971) wherein this Court concluded that sand and gravel taken from the surface was not a mineral. *Trujillo* may be distinguished from the case at bar on at least three grounds. First, in *Trujillo,* Stephenson, J., writing for the Court, interpreted a federal law, the *Stock-*

**2.** *Brown v. American Bank of Commerce,* 79 N.M. 222, 226, 441 P.2d 751, 755 (1968); "[W]here the terms of the contract are clear, the intent must be ascertained from the language used."

*Ashley v. Fearn,* 64 N.M. 51, 53, 323 P.2d 1093, 1095 (1958); "It is well to state that where the terms of an agreement in writing are clear, intent must be ascertained from the language used."

*Fuller v. Crocker,* 44 N.M. 499, 514, 105 P.2d 472, 480 (1940); "The intention of the parties is to be deduced from the language employed by them and the terms of the contract where unambiguous are conclusive."

*Higgins v. Cauhape,* 33 N.M. 11, 261 P. 813 (1927).

*Fancher et al. v. County Com.,* 28 N.M. 179, 210 P. 237 (1922).

3 American Law of Property § 12.90 (Casner ed. 1952).

*Raising Homestead Act,* 43 U.S.C. §§ 291–302 (1970). Sections 291–298 and 302 *repealed,* 90 Stat. 2787 (1976), § 300 *repealed,* 90 Stat. 2792 (1976). That act is not applicable here. Second, the material was on the surface estate in *Trujillo,* where as the stipulated facts to this case reveal the sand and gravel were buried by six to eight feet of overburden. Third, the material in *Trujillo* was not processed by crushing and sizing for commercial sale.[3]

In *Burris v. State ex rel. State Highway Commission, supra,* this Court held by implication that sand and gravel were minerals under a contract using language similar to that in the mineral reservation in the present case. The crucial distinction was the specific agreement to exclude sand and gravel as a mineral in the original "Application to Purchase" filed by the appellants in that case.

*Burris* stands for a completely different proposition and set of circumstances than those found in this fact situation.

What the Legislature meant to be included as a mineral is not well defined in New Mexico. Section 7–9–18, N.M.S.A. 1953 (Repl. 1974) defines minerals:

> The term "minerals" as used in this act [7–9–17 to 7–9–34] shall be construed to include all mineral deposits, whether the same be lode, placer, or otherwise . . .

The definition is undoubtedly vague, but it is also all-inclusive; if the Legislature had wanted to restrict the meaning of "minerals" it could have easily done so, but it did not do so.

In enacting § 7–9–17, N.M.S.A. 1953 (Repl. 1974), titled "Issuance of mineral leases authorized—Minerals not included," the Legislature specifically chose to include "gravel . . . and building materials" as excluded minerals.

Section 7–9–15, N.M.S.A. 1953 (Repl. 1974) confers on the Commissioner the power to lease public lands for "the mining, extraction or disposition of shale, clay or other natural deposits in or upon, or products of, state lands . . . ." From the stipulated facts and the whole record it is clear that the sand and gravel in question were "natural deposits" in the land, and that they were recoverable only by mining. The terms of the mineral reservation specifically reserve to the state the right to "prospect for, mine, produce" the reserved minerals. It follows then that those deposits which can only be removed by mining production must be part of and included in the mineral reservation. *See, Sult v. A. Hochstetter Oil Co.,* 63 W.Va. 317, 61 S.E. 307 (1908).

In a Michigan case, remarkably similar on the facts to the case at bar, the Supreme Court of Michigan held in *Matthews v. Department of Conservation,* 355 Mich. 589, 96 N.W.2d 160 (1959) that a reservation of minerals in the sale of state land included sand and gravel. The specific wording of that reservation provided:

> "Saving and excepting out of this conveyance and always *reserving unto the said State of Michigan, all mineral, coal, oil and gas, lying and being on, within or under the said lands* . . ." (Emphasis original.)

96 N.W.2d at 161.

The Michigan court held that the State Department of Conservation was empowered to sell the land, but required to reserve to the state the mineral rights in the land. This authority was statutory, Mich.Comp. Laws Ann. 1948, §§ 299.2, 322.211, 322.212, the wording of which is functionally the equivalent of New Mexico's law conveying similar powers and duties to the Commissioner of Public Lands, §§ 7–9–12, N.M.S.A. 1953 (Repl. 1974), § 7–9–15, *supra,* § 7–9–17,

---

**3.** *United States v. Schaub,* 17 Alaska 672, 163 F.Supp. 875, 878 (D. Alaska 1958), holding that sand and gravel would be a mineral, "if the deposit is valuable and can be marketed at a profit."

*Loney v. Scott,* 57 Or. 378, 385, 112 P. 172, 175 (1910), "[T]he overwhelming weight of authori-

ty [is] to the effect that mineral lands include, not merely metalliferous lands, but all such as are chiefly valuable for their deposits of a mineral character, which are useful in the arts or valuable for purposes of manufacture."

*supra,* § 7–9–18, *supra,* § 7–11–20, N.M.S.A. 1953 (Repl. 1974), § 7–11–21, N.M.S.A. 1953 (Repl. 1974). The same court concluded that the sand and gravel were "nonmetallic minerals" under the reservation, but minerals nonetheless, and thus part of the reservation of "all minerals" in the conveying patent mandated by the Michigan statutes.

Further, in the District Court of Bernalillo County, Second Judicial District, a case entitled *Roberto I. Herrera v. Town of Atrisco* (1964), Bernalillo County Cause No. A26, the trial judge was posed the same question as is involved in the cause before this Court at the present time. That court, in its findings, related as follows:

10. That sand and gravel differ from each other only with respect to the size of the particle, although they are both of mineral content and are specific minerals.

11. Sand and Gravel being minerals, and under the terms of the lease the Defendant having thereby leased unto the Plaintiff the mineral rights of any and every nature whatsoever, the lease thus encompasses within its terms those minerals which by definition because of the particle size are known as sand and gravel.

In the court's conclusions of law it is stated:

3. That sand and gravel are minerals and that the leasing unto the Plaintiff, ROBERTO I. HERRERA of the mineral rights of any and every nature whatsoever includes sand and gravel.

Cause No. A26 (Bernalillo County) was appealed to the Supreme Court and became Supreme Court No. 7647. This Court did not rule on the sand and gravel issue but returned the case to the Second Judicial District. The cause was not appealed again, so that case became the law. *See, Herrera v. Town of Atrisco,* 76 N.M. 81, 412 P.2d 253 (1966).

For the reasons stated I would uphold the decision of the Commissioner and reinstate it, with instructions to the district court to enter judgment not inconsistent with this dissent.

EASLEY, J., concurs in this dissent.