710 P.2d 84

David ROE and Sheila Roe, Buena Vida, Inc., a corporation, and United Continental New Mexico, Inc., a corporation, Plaintiffs-Appellants,

v.

STATE of New Mexico, ex rel. STATE HIGHWAY DEPARTMENT of the State of New Mexico, Jim Baca, Commissioner of Public Lands of New Mexico, and Kent Nowlin Construction Company, a corporation, Defendants-Appellees.

No. 15263.

Supreme Court of New Mexico.

Dec. 2, 1985.

Rehearing Denied Dec. 19, 1985.

Atwood, Malone, Mann & Turner, Charles F. Malone, R. Tracy Sprouls, Roswell, for plaintiffs-appellants.

Bill R. Garcia, Santa Fe, for defendant-appellee Jim Baca.

Reese C. Jones, Santa Fe, for defendant-appellee Highway Dept.

Downes & Comeau, Kenneth C. Downes, Albuquerque, for defendant-appellee Kent Nowlin.

## OPINION

FEDERICI, Chief Justice.

Plaintiffs-appellants, David and Sheila Roe (Roes), filed this action in the District Court of Chaves County in inverse condemnation to recover damages, including reasonable attorney fees and expenses, from defendants-appellees, the New Mexico State Highway Department (SHD), the New Mexico Commissioner of Public Lands (Commissioner) and Kent Nowlin Construction Company. Buena Vida, Inc. and United Continental New Mexico, Inc., also plaintiffs-appellants, joined the Roes in the suit, seeking damages for partial condemnation of their subdivision, which lies immediately adjacent to the gravel pit created by defendants on the land of the Roes.

After some discovery and various motion hearings, the trial court granted the Commissioner's motion for summary judgment,

in which the other defendants joined. The trial court held that the gravel belonged to the State of New Mexico under a reservation of "minerals" and ordered that any claim of plaintiffs not based on ownership of the gravel be dismissed without prejudice. Plaintiffs appeal. We reverse.

The issue we decide on appeal is whether the gravel on the subject property belongs to the surface estate owner or was reserved to the State of New Mexico under a general mineral reservation contained in the contract of purchase and the patent for the property.

The property is legally described as the E ½ SE ¼ of Section 4, Township 11 South, Range 22 East, N.M.P.M. in Chaves County, New Mexico. This land was conveyed to the State of New Mexico by the United States Government by Clear List No. 5748, dated March 27, 1915, approved by the Secretary of the Interior under Clear List No. 121, dated April 16, 1920. In August 1964, New Mexico Patent for State Land No. 2863 issued to Glaze M. Sacra pursuant to a contract for purchase. The Roes are the successors in interest to Glaze M. Sacra's rights and interests in the subject land.

The "Application to Purchase" made by Mr. Sacra encompassing the subject property contained the following statement:

I further state that the land applied for herein is essentially non-mineral land, and that this application is not made for the purpose of obtaining title to mineral, including but not limited to caliche, *sand and gravel*, coal, oil or gas lands fraudulently but with the sole object of obtaining title to the surface of the land applied for. (Emphasis added.)

The purchase contract, however, simply stated that "the minerals therein shall be and are reserved," and the patent reserved "to the State of New Mexico all minerals of whatsoever kind."

In February 1981, the SHD obtained a Materials Lease from United Continental New Mexico, Inc., the Roes' immediate predecessor in interest, which granted the SHD permission to enter upon the land and remove gravel, in return for compensation on a tonnage basis. This agreement was subsequently voided by the SHD. Later in 1981, the Commissioner issued a Sand and Gravel Lease on the subject land to the SHD. In return, the SHD agreed to pay the Commissioner fifty cents per ton of gravel removed. The SHD entered into a highway construction contract with Kent Nowlin Construction Company, which purportedly granted the company the right to enter upon the land to remove gravel. The gravel was used for highway building purposes. According to the SHD's records, a total of approximately 174,000 cubic yards of processed gravel was expected to be removed.

The gravel is located on the surface of the land. There is no overburden. It is of "fair quality" and is quite common to the area which is the old watercourse of three rivers—the Pecos, the Hondo, and Blackwater Draw. Gravel has been removed from the land to a depth of approximately 30 feet, and the bottom of the gravel deposit has not yet been reached. Prior to the destruction of the surface, natural vegetation grew on the land.

The Roes contend that they are the owners of the gravel removed from the surface; that the Sand and Gravel Lease issued by the Commissioner to the SHD is invalid; that the SHD could not grant to Kent Nowlin Construction Company any rights to the gravel; and that the actions of each defendant in connection with the removal of the gravel are wrongful, and constitute conversion and condemnation of the Roes' property.

The Commissioner and the SHD have denied that the Roes own the gravel and allege that the gravel was reserved to the State in State Patent No. 2863. The Commissioner asserts that this reservation was made pursuant to 43 U.S.C. Section 870 (1982). Each defendant has denied that its actions in connection with the removal of the gravel were wrongful.

The trial court granted defendants' motion for summary judgment for the follow-

ing reasons: first, the court believed that the conveyance of this property by the State was subject to a federal statute, 43 U.S.C. Section 870 (1982), which requires a state to reserve "coal and other minerals" when conveying the numbered sections granted to the states in support of the common schools; second, the trial court determined that the United States Supreme Court's decision in *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983), which interpreted a similar mineral reservation under the Stock-Raising Homestead Act of 1916, 43 U.S.C. Sections 291–301 (1982), controlled on the issue of the proper interpretation of "coal and other minerals" under Section 870. The trial court erred in applying federal law rather than state law to the issues of this case.

The conveyance of this land is not subject to the provisions and limitations of Section 870. Section 870 provides, in pertinent part:

Subject to the provisions of subsections (a), (b), and (c) of this section, the several grants to the States of numbered sections in place for the support or in aid of common or public schools be, and they are, extended to embrace numbered school sections mineral in character, *unless land has been granted to and/or selected by and certified or approved, to any such State or States as indemnity or in lieu of any land so granted by numbered sections.* (Emphasis added.)

\* \* \* \* \* \*

(b) The additional grant made by this section is upon the express condition that all sales, grants, deeds, or patents for any of the lands so granted shall hereafter be subject to and contain a reservation to the State of all the coal and other minerals in the lands so sold, granted, deeded, or patented, together with the right to prospect for, mine, and remove the same.

By its express terms, Section 870 applies only to the specific sections of land granted to the states for support of public schools, and does not apply to land which has been "granted to and/or selected by and certified or approved \* \* \* as indemnity or in lieu of" school land. The limited application of Section 870 is emphasized in the following section, 43 U.S.C. Section 871 (1982):

Nothing contained in section 870 of this title is intended or shall be held or construed to increase, diminish, or affect the rights of States under grants other than for the support of common or public schools by numbered school sections in place, and *said section shall not apply to indemnity or lieu selections* or exchanges or the right after January 25, 1927, to select indemnity *for numbered school sections in place lost to the State under the provisions of said section or any Acts, and all existing laws governing such grants and indemnity or lieu selections and exchanges are continued in full force and effect.* (Emphasis added.)

The reasoning behind the limited application of Section 870 was explained by the Secretary of the Interior in a letter dated January 8, 1927, and addressed to the Chairman of the House Committee on Public Lands. This letter is quoted in full in the report of that Committee on Senate Bill 564, later enacted and now codified as 43 U.S.C. Sections 870, 871 (1982). H.R.Rep. No. 1761, 69th Cong., 2d Sess. (1927). In his letter, the Secretary says, referring to Section 2 of Senate Bill 564 (now codified as 43 U.S.C. § 871):

The concluding section of the substitute bill is designed to preserve and continue in full force and effect, and without change, the rights of the States under grants other than for the purpose of common or public schools, and as to indemnity, lieu selections, or exchanges. These matters are adequately covered by existing law, and if and when selections, indemnity, or exchanges are found by the Secretary of the Interior to be of the character and subject to the provisions of existing law governing same, same are approved or certified to the State by the Secretary of the Interior. This certifica-

tion or approval has been construed by this department and by the Attorney General as equivalent to a patent; that is, that after approval or certification it cannot be set aside except by proceedings in the courts on the ground of fraud. There is therefore no uncertainty as to such titles, but it was deemed advisable to make it clear in this bill that the provisions of all existing laws affecting such matters remain in full force and effect.

H.R.Rep. No. 1761 at 2.

The primary purpose in the enactment of Section 870 was to resolve disputes in the title to common school lands caused by the Interior Department's policy of challenging a state's title to any such land whenever minerals were later discovered thereon, regardless of how long ago the state's title had vested. *See* S.Rep. No. 603, 69th Cong., 1st Sess. (1926); H.R.Rep. No. 1617, 69th Cong., 2d Sess. (1926). As the Secretary explained, however, there was no such uncertainty regarding the title to *in lieu land*. Section 870 therefore need not, and does not, apply to such lands.

The Committee report again emphasizes the limited scope of Senate Bill 564, stating:

> It will be further noted that under the provisions of the áct only those lands granted to the States for the benefit of their common or public schools are affected; that is to say, *the numbered sections that were granted by Congress to the States are the only lands affected by the provisions of the bill.*

H.R.Rep. No. 1761 at 3 (emphasis added).

■ The "numbered sections" which New Mexico was granted "for the support or in aid of common or public schools," Section 870, as specified in Section 6 of the Enabling Act For New Mexico are Sections 2, 16, 32, and 36 of each township. Ch. 310, 36 Stat. 557 (1910) (codified as amended at NMSA 1978, Pamphlet 3) (Enabling Act). In this case the land on which the gravel pit is located is in Section 4. This land is not in one of the numbered "school"

sections, and is therefore not subject to the provisions of Section 870.

■ The land was selected by the State *in lieu of,* or as indemnity for, common school land. *See* Enabling Act § 6; 43 U.S.C. §§ 851, 852 and 854 (1982) (providing for such selections). This Court has not found any federal prohibition of, or limitation on the State's right to sell or otherwise convey such lieu lands, comparable to the limitation which Section 870 imposes on the sale of numbered sections of common school land. Regardless of precisely how the State's title arose, however, it is obvious that the land, simply by virtue of being in Section 4, is not a "numbered school section in place." § 870. The express terms of Sections 870 and 871 clearly provide that Section 870 does not apply to this land. Since Section 870 does not apply, *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983), which construes under another federal act a mineral reservation similar to that contained in Section 870, is not controlling.

The question of the proper interpretation of the mineral reservation in the subject land is therefore not one of federal law, but solely of state law. Thus, this question is not controlled by a federal decision on a federal statute, but rather by the New Mexico Constitution, the Enabling Act, New Mexico statutes and New Mexico case law. N.M. Const. art. XII, § 2; The Enabling Act; NMSA 1978, §§ 19–1–1 to 19–15–10 (Repl.1985); *Jensen v. State Highway Commission*, 97 N.M. 630, 642 P.2d 1089 (1983), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1983). *See also Burguete v. Del Curto*, 49 N.M. 292, 163 P.2d 257 (1945); *State ex rel. Otto v. Field*, 31 N.M. 120, 241 P. 1027 (1925) (New Mexico Commissioner of Public Lands has complete control over State lands).

■ Generally, the cases in New Mexico are in agreement that sand and gravel are not included within the scope of a general mineral reservation contained in a contract of sale or patent. *Jensen; Rickelton v. Universal Contractors, Inc.*, 91 N.M. 479, 576 P.2d 285 (1978); *State ex rel. State*

*Highway Commission v. Trujillo,* 82 N.M. 694, 487 P.2d 122 (1971). Recently this Court overruled *Trujillo* to the extent that it conflicts with the United States Supreme Court's *Western Nuclear,* because the land at issue in *Trujillo* was subject to the mineral reservation contained in the Stock-Raising Homestead Act of 1916, 43 U.S.C. Sections 291–301 (1982), which was construed in *Western Nuclear. Champlin Petroleum Co. v. Lyman,* 103 N.M. 407, 708 P.2d 319 (1985). As already explained, the property at issue in the present case is not subject to a federal act that would bring it within the scope of federal case law.

New Mexico case law is somewhat unsettled, however, as to the significance to be given the statement in the Application to Purchase. In *Burris v. State ex rel. State Highway Commission,* 88 N.M. 146, 538 P.2d 418 (1975), largely because of a similarly worded application, the Court held that the parties intended to reserve sand and gravel to the Commissioner of Public Lands. *Rickelton,* holding that gravel was not reserved, distinguished *Burris* based upon the specific provision concerning sand and gravel contained in the original "application to purchase" that apparently was not present in *Rickelton.* In *Jensen* this Court held that absent a specific contractual provision reserving sand and gravel, common sand and gravel were not "minerals" under a general mineral reservation contained in a contract of purchase or patent. Although *Jensen* distinguished *Burris* upon the mistaken belief that the specific sand and gravel provision in *Burris* was contained in the purchase contract, when in fact it was in the original application, the *Jensen* Court clearly intended that the language of a purchase contract or patent should control. An application is merely a request to purchase, and its provisions do not affect the title to the property. The title that passes is determined by the conveyances themselves, the purchase contract and the patent. For the State to reserve sand and gravel, a provision so specifying must be included in these conveyances. To the extent that *Burris* may be construed to

be inconsistent with this opinion, it is hereby overruled.

 In the instant case, we determine that although the original applicant for the Roes' property did not apply for title to sand and gravel, such title nevertheless passed with the surface estate since sand and gravel were not specifically reserved by the purchase contract and patent. Based upon the undisputed facts in this case and the applicable New Mexico law, the trial court's summary judgment in favor of defendants-appellees is reversed and the cause remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J.