[Civ. No. 181. Fifth Dist. Apr. 9, 1963.]

MATHILDE BAMBAUER, Plaintiff and Appellant, v. HENRY F. MENJOULET, as Executor, etc., Defendant and Respondent.

C. Ray Robinson, W. E. Craven and Duane W. Dresser for Plaintiff and Appellant.

William D. Corbett and Clifford B. Bachand for Defendant and Respondent.

STONE, J.—This is an appeal from a judgment declaring that appellant has no right in or to gravel deposits located on certain lands owned by respondent. In 1919 appellant, by deed, conveyed to respondent's predecessor in interest Section 6, Township 11 South, Range 11 East, M.D.B. & M., in

the County of Merced. The deed contained the following language:

". . . reserving and excepting therefrom an undivided one-half interest, in favor of the grantor, Mathilde Bambauer, her heirs and assigns, in and to all mineral, and oil rights, and in and to all minerals and oils in the demised premises, to be held by said Mathilde Bambauer, her heirs and assigns as tenants in common with the grantee, H. L. Menjoulet, his heirs and assigns."

It was stipulated that "there are substantial gravel deposits on the land in commercial quantities" and that the land has been used for cattle and sheep raising.

On December 8, 1959, respondent's predecessor in interest entered into an agreement with a third party granting the exclusive right to remove gravel and native materials from the streambed of Los Banos Creek where it traverses Section 6, for a period of 10 years from the execution of the agreement. Appellant claimed title to one-half of the gravel pursuant to the reservation in her deed, set forth above, and brought this action for declaratory relief. The trial court found against appellant, and the sole question on this appeal is whether gravel is a mineral in the sense that the term is used in the deed.

Appellant introduced no evidence on the issue. Respondent called as a witness an engineering geologist, whose qualifications are not questioned. He testified that he examined approximately one-third of the 640-acre parcel, and found gravel over that entire area to a minimum depth of 12 feet. We gather from the record that the trial court was impressed, and with some justification, by the thought of a 200-acre hole 12 feet deep remaining after removal of the gravel. Certainly removal of the surface soil would render the land useless for agricultural purposes. Cases from other jurisdictions have held that destruction of agricultural land is sufficient reason for holding that the word "mineral" used in a reservation of conveyance does not include gravel. (*Psencik* v. *Wessels* (Tex. Civ. App. 1947) 205 S.W.2d 658; *Farrell* v. *Sayre* (1954) 129 Colo. 368 [270 P.2d 190].) Perhaps this line of reasoning is best expressed in an English case, *Waring* v. *Foden* [1932] 1 Ch. (Eng.) 276, wherein the court said:

". . . it seems to me that it would be a negation of the substance of the transaction to hold that all sand and gravel, which is very generally a part of the soil and subsoil of this farm and worked and gotten from the surface, was excepted from the grant and remained the property of the plaintiff. It

would not be a reservation of what is exceptional, but of what is general and of general importance to the utility and efficiency of the land conveyed. *The exception ought, . . . , if it was intended to have the effect now claimed, to have been expressed in far clearer terms.*" (Italics added.)

The question has not been raised directly in this state, although appellant cites California cases holding that a mineral reservation carries with it the right to placer mine gold even though the process destroys the utility of the surface soil. (*Yuba Inv. Co.* v. *Yuba Consol. Gold Fields*, 184 Cal. 469, 480 [194 P. 19]; *Trklja* v. *Keys*, 49 Cal.App.2d 211, 212 [121 P.2d 54].) However, in the cited cases gold was being placer mined and since gold is indisputably a mineral, these cases merely stand for the proposition that the right to remove minerals reserved by a grantor will not be enjoined solely because it may result in destruction of the topsoil. They do not help us in determining whether gravel is a mineral.

Appellant offered no evidence pertaining to the meaning of the word "mineral" as used in the deed before us. Furthermore, appellant argues that this court may not consider the expert testimony received by the trial court as to the scientific interpretation of the word. Thus we are asked to interpret the meaning of the word "mineral" in relation to the substance "gravel" without suggestion by appellant of any standard, test, criterion or probative facts as a guide. Resort to the generic classification of matter into the categories of animal, vegetable and mineral, leads to the absurd conclusion that the soil itself would be reserved, and the conveyance nullified. Appellant, aware of this result, eschews the generic classification and argues simply that courts in other states have held gravel to be a mineral, and so should this court.

Obviously there must be some criterion used to determine whether gravel comes within the term "mineral," otherwise the decision would be made without reason. We find such a criterion or test in the testimony of the engineering geologist, the gist of which is summarized by the following questions directed to him by the trial court:

"The Court: Let me ask you one question and shorten this up. The fact of the matter is, there is mineral mixed through this sand in these particular rocks and so forth, but for all practical purposes and for commercial investigation or investment, the only purpose of this material and aggregate is valuable as ordinary gravel, isn't it?

A. I agree with you, your Honor.

Q. Yes. And if you went in there and tried to analyze this material or any mineral that is in it, there would be no profit in it at all; it wouldn't be practical to try to extract any material from this sand or gravel on a commercial basis?

A. To the best of my knowledge, that is correct.''

Courts of other jurisdictions, in determining whether gravel is a mineral, have followed the test or standard expressed by the expert witness in this case. (*Holloway Gravel Co.* v. *McKowen* (1942) 200 La. 935 [9 So.2d 228]; *United States* v. *Aitken,* 25 Philippine 7; *Psencik* v. *Wessels, supra.*) ▮ We find the reasoning of the court in *Lillington Stone Co.* v. *Maxwell,* 203 N.C. 151 [165 S.E. 351] persuasive. At page 352 [165 S.E.] the court said:

''Speaking to the subject in *U.S.* v. *Aitken,* 25 Philippine, 7, the court said: 'It is true that commercial gravel belongs to the mineral kingdom in that it is inorganic and that it is formed by nature alone. But there is an important distinction between it and any of the so-called minerals as recognized by the authorities. Practically speaking, all the definitions of the word ''mineral'' agree that such a substance must always have a definite chemical composition by which it can be easily recognized, in whatever part of the earth it may be found. There can be no such uniformity in the chemical content of gravel deposits, for the reason that this depends entirely upon the character of the mineral deposits which have contributed to their formation. And upon the character, quantity, and proximity of the minerals to the gravel deposit, their susceptibility to erosion, the violence with which the erosion is accompanied, the duration of the eroding process, as well as various other facts, depends the size of the pebbles and the quality of the deposit as commercial gravel. There is nothing constant in the character of commercial gravel by which to identify it as a mineral, except that it consists of broken fragments of rock mingled with finer material, such as sand and clay. Nothing definite can be said of its chemical composition as can be said of the minerals. Commercial gravel is simply a jumbled mass of fragments of various minerals (rocks). Science, at least, cannot accept as a distinct subdivision of the mineral kingdom any substance whose character and attributes are so composite and fluctuating.''

▮ Appellant relies largely upon Public Resources Code section 6407, which provides that mineral deposits reserved to the state include gravel together with many other substances. The trial court took note of section 6407 in its memorandum

opinion, pointing out that the deed was executed in 1919, while the code section was enacted in 1947, and concluded that the code section should not be administered retroactively. However, quite aside from this consideration, the section has no bearing whatever on the interpretation of deeds between private parties. Section 6407, by its very wording, is specifically limited to mineral deposits reserved to the state.

It is to be noted also that section 6407 by legislative fiat designates ''oil, gas, oil shale, coal, phosphate, alumina, silica, fossils of all geological ages, sodium, gold, silver, metals and their compounds, alkali, alkali earth, sand, clay, gravel, salts and mineral waters'' as minerals. If this court were to hold that Public Resources Code section 6407 controls the document of conveyance before us, then perforce all of the other substances specified in the section would likewise come within the term ''minerals.'' We do not believe that it was ever intended that section 6407 should be given such application to documents of conveyance between private citizens.

The judgment is affirmed.

Conley, P. J. and Brown, (R. M.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 4, 1963.