487 P.2d 122

**STATE of New Mexico ex rel. STATE HIGHWAY COMMISSION of New Mexico, Petitioner-Appellee,**

v.

**Lucia L. TRUJILLO and Ernest Trujillo, Defendants-Appellants.**

No. 9132.

Supreme Court of New Mexico.

June 28, 1971.

Wright & Kastler, Raton, for appellants.

James A. Maloney, Atty. Gen., Margaret W. Lamb, Special Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

STEPHENSON, Justice.

This is an appeal by defendants-appellants Trujillo (the landowners) from a judgment entered in a condemnation case which determined that road building material from the landowners' property had been reserved to the government in the patents and that petitioner-appellee (Highway Commission) was therefore not required to pay the landowners for the material taken.

The petition sought condemnation of a material pit, ownership of which was

claimed by landowners. The Highway Commission tendered a contract to pay seven cents per ton for the material. It was never fully executed, although counsel have since stipulated that such is the market value of the material.

The patents by which a predecessor of the landowners acquired title contained the following reservation:

"Excepting and reserving, however, to the United States all the coal and other minerals in the lands so entered and patented, together with the right to prospect for, mine, and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862)."

The cited Act is known as the Stock-Raising Homestead Act, 43 U.S.C. §§ 291–302.

The Highway Commission, after suit was filed, procured from the Bureau of Land Management, Department of the Interior, a "free use permit" authorizing the removal of the materials for use in a federal aid project under construction. It amended its petition to take the materials, and further said that " * * * the Petitioner not knowing whether the Defendants have any ownership in and to said surfacing material, their ownership * * * is hereby denied."

The evidence consisted of certain facts stipulated at a pretrial conference, the patents and the free use permit. It was agreed that the sole issue was of law and was as to the ownership of the material, as to which it was stipulated that:

" * * * the material is taken from the land in its exposed state, without refining, and is used (as gravel) as an aggregate for coarse and surfacing materials for highway construction."

The trial court concluded that the Stock-Raising Homestead Act segregated the surface estate from the mineral or subsurface estate, granting the former to the entryman for stock raising and agricultural purposes and reserving the latter to the United States. It held that the patents conveyed "only the right to use the surface of the land described in such patents, and reserved to the United States all subsurface rights." It further concluded that monzonite was a mineral which was reserved in the patents and was owned by the United States.

Consistent with its decision, the trial court concluded that the landowners were not entitled to be compensated for the material and, following the entry of judgment, landowners appealed.

The statute provides in pertinent part, concerning patents granted thereunder, that " * * * any patent therefor shall contain a reservation to the United States of all minerals in said lands and the right to prospect for, mine, and remove the same." 43 U.S.C.A. § 291. Section 299 of that title provides that "all entries made and patents issued * * * shall be subject to and contain a reservation to the United States of all the coal and other minerals in the lands so entered and patented, together with the right to prospect for, mine, and remove the same."

■ The excellent and interesting briefs of the parties range across a broad spectrum of controversies, the resolution of several of which is unnecessary for our decision. The landowners first attack findings of fact of the trial court determining that the material was monzonite, that it was being taken from a knoll and that monzonite is a porphyritic rock having a certain chemical composition. They assert that the court ventured outside the stipulated facts and correctly point out that where evidence consists of documents and stipulated facts, this court is in as good a position as was the trial court to determine the facts and we are not bound by the trial court's findings. Atlantic Refining Company v. Beach, 78 N.M. 634, 436 P.2d 107 (1968).

■ The landowners are probably correct in their assertion that the findings which they attack are unsupported by the record, but the error, if any, is harmless.

Obviously the material is made of something and has some chemical makeup. Its composition is necessarily "mineral" in nature, at least in the sense that it is not animal or vegetable. It seems to have been simply country rock adaptable for use, and used in, the construction of a highway. The Highway Commission conceded on oral argument that the chemical makeup of the rock taken was immaterial.

As we view the case, the sole issue which confronts us is the proper construction to be placed on the word "mineral" in the context of the statute and the patent. Such a construction, in varying frames of reference, is attended with some difficulty.

In Bumpus v. United States, 325 F.2d 264 (10th Cir. 1963) the court said:

"'Mineral' is a word of general language, and not per se a term of art. It does not have a definite meaning. It is used in many senses. It is not capable of a definition of universal application, but is susceptible to limitation or expansion according to the intention with which it is used in the particular instrument or statute. Regard must be had to the language of the instrument in which it occurs, the relative position of the parties interested and the substance of the transaction which the instrument embodies." (Footnotes omitted.)

On the same subject, in State Land Board v. State Department of Fish and Game, 17 Utah 2d 237, 408 P.2d 707 (1965), the court said:

"It is to be conceded that in its broadest sense the term 'minerals' would include sand and gravel. In fact, under the common cliche that everything is either 'animal, vegetable or mineral' the term would include almost all material substances of the earth, its waters and even the air we breathe. But a reflection upon the semantics of words reveals how unsure and varied are the possibilities of their meanings when considered in the abstract; and that in order to divine the true meaning in any given usage, it is necessary to look to the context."

See also Board of County Com'rs of Roosevelt County v. Good, 44 N.M. 495, 105 P.2d 470 (1940), in which the court, in holding that caliche was not a precious metal within the provisions of a condemnation statute, digressed to a discussion of "minerals" and said that caliche was a mineral, as were stone and rock. It is clear the court there spoke of "mineral" in its comprehensive sense as meaning substances or materials which are neither animal nor vegetable.

■ The material which we are considering had no rare or exceptional character and possessed no peculiar property giving it special value. It seems useful only for road building purposes, and moreover it was stipulated to have been taken in its exposed state. Although courts have reached differing results in arriving at the judicially ascertained intent of reservation clauses such as the one before us, we are of the opinion that under the circumstances of this case the reservation of coal and other minerals was not intended to include rock.

An annotation entitled "Clay, sand or gravel as 'minerals' within deed, lease, or license" appears at 95 A.L.R.2d 843 (1964) and is of some interest. The annotation states that it is a fair common-sense inference that in most instances, clay, sand or gravel was not specifically in the minds of the parties, but that the paramount rule is to consider the entire instrument and be controlled by the intention so determined. It is said that most cases have held clay, sand and gravel to be included in the word "minerals," but:

"There are, however, important considerations which cause exceptions to this general rule. Among them are that materials which possess no exceptional characteristics or value which distinguish them from the surrounding soil are not likely to be recognized as 'minerals' in the sense of such conveyances; that materials which form part of the surface are also not legally recognizable as minerals, nor are those which cannot be ob-

-tained without a destruction of the surface, in the absence of extremely clear indication that they are to be so recognized and that the usual considerations of avoiding damage to the surface estate are to be deliberately disregarded; * *"

Each of these exceptions seem applicable here.

See also Whittle v. Wolff, 249 Or. 217, 437 P.2d 114 (1968); Bumpus v. United States, supra; Bambauer v. Menjoulet, 214 Cal.App.2d 871, 29 Cal.Rptr. 874, 95 A.L. R.2d 839 (5th Dist.1963); Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994 (1949) and Steinman Development Company v. W. M. Ritter Lumber Company, 290 F. 832 (W.D.Va.1922), aff'd 290 F. 841 (4th Cir. 1923).

The Commission places great reliance upon Skeen v. Lynch, 48 F.2d 1044 (10th Cir. 1931) construing the same federal statute. In that case, the patentee of lands in Lea County, New Mexico, sought a judicial determination that water, oil and gas were not reserved by language in the patent identical to that with which we are here concerned. This portion of the case was dismissed because the United States was an absent indispensable party.

A second count sought a determination that the patentee was by law the owner of and possessed of a preference right above all others to prospect for and produce oil and gas on the property. The second count was on the assumption that oil and gas were reserved to the United States. The court accepted the assumed fact as irrefutable. In its discussion, apparently by way of emphasis, because the statements do not seem essential to the limb of the case under consideration, the court said:

"The legislative history of the Stockraising Homestead Act when it was reported for passage including the discussion that followed relevant to this subject leave us no room to doubt that it was the purpose of Congress in the use of the phrase 'all coal and other minerals' to segregate the two estates, the surface for stockraising and agricultural purposes from the min-eral estate, and to grant the former to entrymen and to reserve all of the latter to the United States."

Presumably the trial court was guided by Skeen, and the court in Skeen apparently gave weight to the legislative history of the Stock-Raising Homestead Act, a feature which the Commission urges us to consider. A committee report states that the "purpose * * * is to limit the operation of the bill strictly to the surface of the lands * * *."

We find nothing in the statute as enacted which indicates an intention to create two estates or to grant the entryman use of the surface only. Had such been the intention of the Congress, it would have been a simple matter for it to have said so. Rather than reserving *all* the subsurface estate only minerals *in* the land were reserved. Refusal to give credence to the "two estates" or "surface only" concept leads to no absurd result. 50 Am.Jur. Statutes § 334. In fact, the reverse is more nearly true. It is clear that the intention of the act was to permit entry upon relatively large tracts suitable only for grazing. For this objective, grass is essential, and grass grows in dirt. A considerable portion of the earth's surface seems to be comprised of dirt. Can it be seriously thought that the patentee under the act in question would not own the dirt in which the grass is situated and finds its sustenance? If he constructs a stock tank, is it reasonable to suppose that the patentee was moving and using material which he did not own? And what of subsurface water brought to the surface by pumps or windmills and used for stockraising purposes? Certainly, dirt and water as well are minerals in the broadest sense, at least to the extent of not being animal or vegetable.

Although we have no quarrel with the result of Skeen that oil and gas are minerals, we cannot subscribe to the theory of Skeen and the trial court that the Congress intended the entryman to have use of the surface only.

· From what we have said, it follows that the judgment is reversed, with directions to the trial court to proceed to determine the amount of material removed and to enter judgment for the landowners.

It is so ordered.

McMANUS and OMAN, JJ., concur.