WESTERN NUCLEAR, INC., a Delaware Corporation, authorized and doing business in the State of Wyoming, Plaintiff-Appellant,

v.

Cecil ANDRUS, Secretary of the United States Department of the Interior, and the United States, Defendants-Appellees,

and

Wyoming Stock Growers Association, John Orr and Associated General Contractors of Wyoming, Intervenors.

State of Utah and Associated General Contractors of Wyoming, Amici Curiae.

No. 79–2290.

United States Court of Appeals, Tenth Circuit.

Argued July 17, 1981.

Decided Nov. 13, 1981.

Harley W. Shaver, Denver, Colo. (John H. Licht, Denver, Colo., with him on the brief), of Canges, Shaver, Volpe & Licht, Denver, Colo., for plaintiff-appellant.

Edward J. Shawaker, Washington, D. C. (Robert L. Klarquist, Dept. of Justice, Washington, D. C., James W. Moorman, Asst. Atty. Gen., Washington, D. C., Charles E. Graves, U. S. Atty., and Sharon A. Lyman, Asst. U. S. Atty., Cheyenne, Wyo. and Lyle K. Rising, Dept. of the Interior, Denver, Colo., with him on the brief), for defendants-appellees.

David L. Wilkinson, Utah Atty. Gen., Richard L. Dewsnup, and Anne M. Stirba, Asst. Attys. Gen., Salt Lake City, Utah, on the brief, for State of Utah.

Marilyn S. Kite, Laramie, Wyo., on the brief, for Associated Gen. Contractors of Wyoming, intervenor and amicus curiae.

Before McWILLIAMS and BREITEN-STEIN, Circuit Judges, and CHILSON,[*] District Judge.

McWILLIAMS, Circuit Judge.

The central issue in this appeal concerns the meaning and scope of a mineral reservation in a patent granted under the Stock-Raising Homestead Act of 1916. Specifically, the question before us is whether gravel is included in the reservation of "coal and other minerals." The Wyoming Office of the Bureau of Land Management (BLM), the Interior Board of Land Appeals (IBLA), and the United States District Court for the District of Wyoming all concluded that gravel is a mineral reserved to the United States in a patent issued pursuant to the Stock-Raising Homestead Act of 1916. We conclude that the gravel here involved is not a reserved mineral, and therefore reverse.

The current dispute involves a tract of land situate in the State of Wyoming, which was conveyed by the United States to appellant's predecessor-in-interest on February 4, 1926, by Patent No. 974013, issued pursuant to the Stock-Raising Homestead Act of 1916.[1] In accord with the provisions of the Act, the patent contained the following reservation:

> Excepting and reserving, however, to the United States *all the coal and other minerals* in the lands so entered and patented, together with the right to prospect for, mine, and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916. (emphasis added).

Western Nuclear, Inc., the appellant, has been involved in the mining and milling of uranium ore in and around Jeffrey City, Fremont County, Wyoming, for more than twenty years. From time to time during those years Western Nuclear obtained, from various sources, gravel, which it used for road surfacing, paving aggregate, shaft concrete aggregate, and the like. In 1975, Western Nuclear acquired, in fee, a portion of the land subject to the 1926 patent and proposed to meet its future gravel needs from an open gravel pit located on the acquired premises.[2] Western Nuclear first secured a permit for development of the gravel pit from the Wyoming Department of Environmental Quality and then proceeded to extract gravel from the pit. It thereafter removed some 43,000 cubic yards of gravel to further its own commercial operations.

---

[*] Honorable Hatfield Chilson, United States District Judge for the District of Colorado, sitting by designation.

1. Act of December 29, 1916, ch. 9, 39 Stat. 862, 43 U.S.C. §§ 291–301 (1976). The Stock-Raising Homestead Act was suspended effectively by executive action pursuant to the Taylor Grazing Act of June 28, 1934, ch. 865, 48 Stat. 1269, 43 U.S.C. § 315 et seq. (1976). The Stock-Raising Homestead Act was repealed officially by the Federal Land Policy and Manage-

ment Act of 1976, Pub.L. No. 94–579, § 702, 90 Stat. 2787, 43 U.S.C. §§ 1701–1782 (Supp. II 1978). Valid existing patents such as the one belonging to the appellant were unaffected by the repeal.

2. Appellant's land is semi-arid, with the little vegetative cover consisting mainly of sagebrush. The gravel is overlaid by a soil cover of loamy sand less than two feet thick. *Western Nuclear, Inc.*, 85 Interior Dec. 129, 132 (1978).

Later, the Wyoming Office of the BLM cited Western Nuclear for trespass. After hearing, the BLM entered its decision, which held, in substance, that the gravel on and underlying Western Nuclear's land had been reserved to the United States under the 1926 patent and that Western Nuclear had committed an unintentional trespass on federally-owned minerals by extracting and removing such gravel.[3] Western Nuclear was held liable for $13,000 in damages, such sum representing the value of the gravel which Western Nuclear had removed from the land.

Western Nuclear appealed the decision of the BLM to the United States Department of the Interior. On review, the IBLA held that the BLM did have jurisdiction over the subject matter of the dispute and that the gravel in question had been reserved to the United States in the 1926 patent. Because of a slight mathematical miscalculation, the damage award was reduced from $13,000 to $12,802.50. The opinion of the IBLA appears at 85 Interior Dec. 129 (1978).

Thereafter, Western Nuclear initiated the present proceeding, which it denominated as a "Complaint/Petition for Review," in the United States District Court for the District of Wyoming, asking that the IBLA decision be set aside and that the trial court quiet Western Nuclear's title to the gravel in question. Jurisdiction was based on 5 U.S.C. § 704 (1976) and 28 U.S.C. § 1331(a) (1976).

On judicial review, the trial court generally affirmed the decision of the IBLA, although the trial court ordered "that the element of damages shall be determined by the collaboration of the Wyoming State Office of the Bureau of Land Management and the landowners, Western Nuclear, Inc." Specifically, the Honorable Ewing T. Kerr, after an analysis of the legislative history, contemporaneous definitions and court decisions, concluded that gravel is a mineral within the meaning of the mineral reservation of the Stock-Raising Homestead Act. *See Western Nuclear, Inc. v. Andrus,* 475 F.Supp. 654 (D.Wyo.1979). Western Nuclear now appeals.[4]

In this Court, Western Nuclear's primary argument is that gravel is not a reserved mineral, and that the trial court erred in affirming the IBLA's holding that the gravel was reserved to the United States. Western Nuclear alternatively contends

---

**3.** The BLM citation alleged a violation of the Materials Act of July 31, 1947, ch. 406, 61 Stat. 681, *as amended by* the Surface Resources (Common Varieties) Act of July 23, 1955, ch. 375, 69 Stat. 367, 30 U.S.C. §§ 601–615 (1976). The Materials Act, as amended, authorizes the Secretaries of the Interior and Agriculture to dispose of *common varieties* of gravel and other mineral materials found on the public lands of the United States to private parties upon the payment of adequate compensation therefor. 30 U.S.C. § 601. The Act further provides that no deposit of *common varieties* of sand and gravel can be deemed a valuable mineral deposit within the meaning of the mining laws. 30 U.S.C. § 611. The Act continues, however, to permit the location of such mineral materials under the mining laws if the minerals are shown to possess a "distinct and special value."

**4.** In the trial court, the Wyoming Stock Growers Association, John Orr, and the Associated General Contractors of Wyoming were permitted to intervene as parties plaintiff. The basis for such intervention was that they too had an interest in lands patented under the Stock-Raising Homestead Act of 1916 and subject to the same mineral reservation as Western Nuclear.

The Memorandum Opinion of the trial court, appearing at 475 F.Supp. 654 (D.Wyo.1979), was entered on August 27, 1979, but it makes no mention of any intervenors. By a subsequent order, dated November 14, 1979, the trial court amended its earlier judgment to reflect that it had made no findings concerning the evidence submitted by the intervenors. The court decreed that the intervenors were not barred from raising, in the future, issues of fact or law concerning their property rights in sand and gravel patented pursuant to the Stock-Raising Homestead Act and that the earlier opinion "shall not be *res judicata* of the individual intervenors' rights in other fact situations."

Only Western Nuclear filed a notice of appeal, which was directed to the Memorandum Opinion of August 27, 1979, and to the subsequent order of the trial court denying Western Nuclear's motion to alter or amend judgment. In this Court, the Associated General Contractors of Wyoming, but not the Wyoming Stock Growers Association, appears as *amicus curiae.* The State of Utah also appears here as *amicus curiae* in support of Western Nuclear's position.

that if the first issue be resolved adversely to it, then we should address ourselves to Western Nuclear's second argument that the BLM lacked subject-matter jurisdiction and, therefore, had no authority to issue the trespass notice. We believe that the jurisdictional issue is one which must be addressed first, although, in our view, the jurisdictional issue and the question of whether gravel is a mineral reserved under the 1926 patent are, to a degree at least, interrelated. As concerns jurisdiction, the trial court simply rejected that issue with the brief comment that "this argument lacks merit." 475 F.Supp. at 656.

The trespass notice served on Western Nuclear by the BLM stated that, in the opinion of the Secretary of the Interior, Western Nuclear had removed federally-owned materials without authorization and, in so doing, had violated the Materials Act of 1947 and the Surface Resources (Common Varieties) Act of 1955, and 43 C.F.R. § 9239.0–7 (1980). That regulation provides as follows:

> The extraction, severance, injury, or removal of timber or mineral materials *from public lands under the jurisdiction of the Department of the Interior*, except when authorized by law and the regulations of the Department, is an act of trespass. Trespassers will be liable in damages to the United States and will be subject to prosecution *for such unlawful acts*. (emphasis added).

Western Nuclear points out that this regulatory prohibition is restricted to the "public lands," and that the Materials Act of 1947 and the Surface Resources (Common Varieties) Act of 1955 also are limited in scope because they authorize the disposition of gravel from "public lands" only. The basic theme of Western Nuclear's argument that the BLM was without jurisdiction in this case, therefore, is that the land here involved was patented in 1926, and, accordingly, such was no longer "public land" as of the date of the notice of trespass in 1975.

■ We recognize that the United States Supreme Court has consistently held that the term "public lands" means lands which are subject "to sale or other disposal under general laws." *Northern Lumber Co. v. O'Brien*, 204 U.S. 190, 196, 27 S.Ct. 249, 250, 51 L.Ed. 438 (1907); *Bardon v. Northern Pacific Railroad Co.*, 145 U.S. 535, 538, 12 S.Ct. 856, 857, 36 L.Ed. 806 (1892); *Newhall v. Sanger*, 92 U.S. 761, 763, 23 L.Ed. 769 (1876). The term generally does not include lands to which any claims or rights of others have attached. *Payne v. Central Pacific Railway Co.*, 255 U.S. 228, 237–38, 41 S.Ct. 314, 316–317, 65 L.Ed. 598 (1921). Under the general rule, therefore, "privately held lands in which the United States has retained mineral rights . . . are not 'public lands' as defined by the Supreme Court because they clearly are not subject to sale under general laws, and there certainly are other claims or rights attached to them." *Columbia Basin Land Protection Ass'n. v. Schlesinger*, 643 F.2d 585, 598 (9th Cir. 1981).

■ The general rule, however, does not, in our view, resolve the present jurisdictional dispute. At the heart of the present controversy is the Stock-Raising Homestead Act, 43 U.S.C. § 299 (1976), which not only requires that patents issued under the Act contain the mineral reservation above set out, but also provides that the reserved mineral interests are "subject to disposal by the United States in accordance with the provisions of the coal and mineral laws in force at the time of such disposal." In our view, this statute contemplates that the Department of the Interior should have continuing jurisdiction over, and administration of, mineral interests reserved to the United States under the Stock-Raising Homestead Act until such time as those interests are disposed.

■ In concluding that the BLM's exercise of jurisdiction was appropriate in this case, we note that the Secretary of the Interior has broad authority as general manager over the federal lands. The United States Supreme Court has affirmed many times the sweeping scope of the Secretary's powers. *See Boesche v. Udall*, 373 U.S. 472, 476–78, 83 S.Ct. 1373, 1375–1376,

10 L.Ed.2d 491 (1963); *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336–37, 83 S.Ct. 379, 382, 9 L.Ed.2d 350 (1963); *Cameron v. United States*, 252 U.S. 450, 459–64, 40 S.Ct. 410, 412–413, 64 L.Ed. 659 (1920). Further, Congress has provided that:

> The Secretary of the Interior or such officer as he may designate shall perform all executive duties appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands, and, also, such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the Government. 43 U.S.C. § 2 (1976).

And the Secretary is further authorized "to enforce and carry into execution, by appropriate regulations, every part of the provisions of [Title 43] not otherwise provided for." 43 U.S.C. § 1201 (1976).

All things considered, we are of the view that the BLM had the authority to cite Western Nuclear for the alleged trespass on mineral interests retained by the United States in the 1926 patent. Pursuant to such authority, the BLM properly held a hearing to determine whether, in fact, there was such a trespass.

We turn now to the primary issue presented by this appeal, *i. e.*, whether gravel is a mineral reserved to the United States in a patent issued pursuant to the Stock-Raising Homestead Act. Gravel, as defined by the dictionary, is "small stones, or fragments of stone often intermixed with particles of sand." Black's Law Dictionary 830 (rev. 4th ed. 1968). A dictionary definition, however, is not necessarily of any great value. In this connection, the Supreme Court, in *Northern Pacific Railway Co. v. Soderberg*, 188 U.S. 526, 530, 23 S.Ct. 365, 366, 47 L.Ed. 575 (1903), commented as follows:

> The word "mineral" is used in so many senses, dependent upon the context, that the ordinary definitions of the dictionary throw but little light upon its signification in a given case. Thus the scientific

division of all matter into the animal, vegetable or mineral kingdom would be absurd as applied to a grant of lands, since all lands belong to the mineral kingdom, and therefore could not be excepted from the grant without being destructive of it. Upon the other hand, a definition which would confine it to the precious metals, gold and silver, would so limit its application as to destroy at once half the value of the exception. Equally subversive of the grant would be the definition of minerals found in the Century Dictionary: as "any constituent of the earth's crust; . . . .

The gravel deposit involved in the instant case is described in the BLM report as follows:

> The deposit located on the property is an alluvial gravel with 6.4 acres of the 14 acre parcel mined for gravel. . . . There are 6–12 inches of overburden on the site. . . . It is estimated that the deposit thickness will average 10 feet or more in thickness. In the nature of speculation, the deposit could cover up to 40 acres, however this report is restricted to the 6.4 acre area mined. 85 Interior Dec. at 131.

The subject gravel is also referred to in that same BLM report by a geologist as follows:

> The gravel is overlain [sic] by a soil cover of fairly well developed loamy sand, some 12–18 inches in thickness. There is a relatively good vegetative cover, consisting mainly of sagebrush, and an understory of various native grasses. *Id.* at 132.

There is a diversity of judicial thought on the recurring question of whether ordinary gravel, which is primarily used, as it is in the instant case, as an aggregate in the mixing of concrete, is a mineral. An annotation appearing at 95 A.L.R.2d 865 (1964) states the general rule to be that gravel is not included within the meaning of the word "mineral" as that term is used in conveyances either granting or reserving mineral interests.[5] 54 Am.Jur. 2nd, *Mines and Minerals* § 8 (1971), reads:

---

5. *See, e. g., Bambauer v. Menjoulet*, 214 Cal. App.2d 871, 29 Cal.Rptr. 874, 95 A.L.R.2d 839

(1963) (gravel not a mineral in deed reserving "all mineral and oil rights" because commercial

Generally, on the ground that they do not possess exceptional qualities or value, but are only part of the soil itself, sand, gravel and clay are not considered minerals, although there is some contrary authority. Even if the clay, sand or gravel is not actually part of the surface and can be obtained only by destroying the surface, it has been held not to constitute a "mineral."

█ In construing the phrase "coal and other minerals," as such appears in the Stock-Raising Homestead Act of 1916, our primary task is to ascertain congressional intent. This Court previously has held that the general intent of Congress in enacting the Stock-Raising Homestead Act of 1916 was to separate the surface estate from the mineral estate, granting the former to the patentee for the purpose of raising cattle, and reserving "all of the latter to the United States." *Skeen v. Lynch*, 48 F.2d 1044, 1046 (10th Cir.), *cert. denied*, 284 U.S. 633, 52 S.Ct. 17, 76 L.Ed. 539 (1931). However, neither the Act itself, nor, in our view, the congressional debate leading up to the passage of the Act, indicate whether Congress intended that ordinary gravel be deemed part of the mineral estate. The legislative history of the Act is reviewed fully in the trial court's opinion, 475 F.Supp. at 656–59, and in *United States v. Union Oil Co.*, 549 F.2d 1271, 1273–79 (9th Cir. 1977), and will not be repeated here.

The Act should be viewed in its historical setting. In 1910, the Department of the Interior held that deposits of sand and gravel suitable for mixing with cement for concrete construction did not render the land in which they were found mineral in character within the meaning of the mining laws, or bar entry under the homestead laws. *Zimmerman v. Brunson*, 39 Interior Dec. 310 (1910). In *Zimmerman*, the Secretary stated that "the Department, in the absence of specific legislation by Congress, will refuse to classify as mineral land containing a deposit of material not recognized by standard authorities as such, whose sole use is for general building purposes, and whose chief value is its proximity to a town or city, in contradistinction to numerous other like deposits of the same character in the public domain." *Id.* at 313. The Secretary rested his conclusion upon "a search of the standard American authorities [which] failed to disclose a single one which classifie[d] a deposit [of gravel] as a mineral." *Id.* at 312. The Secretary dismissed Zimmerman's mineral entry, and ordered that Brunson's homestead entry remain intact. It is evident, therefore, that the Department of the Interior, as of 1910, did not classify gravel as a mineral.

A few years after *Zimmerman*, the Department of the Interior began the prelimi-

gravel has no definite chemical composition); *Morrison v. Socolofsky*, 600 P.2d 121 (Colo. App.1979) (where gravel underlies topsoil of entire tract and surface owner purchased land for farming and gravel removal would destroy the agricultural usefulness, parties did not intend to include gravel within mineral reservation); *Farrell v. Sayre*, 129 Colo. 368, 270 P.2d 190 (1954) (where sand and gravel constitute the surface of the land, a straight mineral reservation does not reserve the sand and gravel); *Holloway Gravel Co. v. McKowen*, 200 La. 917, 9 So.2d 228 (1942) (sand and gravel not contemplated as reserved by a mineral reservation because such would be inconsistent with trade usage); *Beck v. Harvey*, 196 Okl. 270, 164 P.2d 399 (1944) (conveyance or reservation using term "mineral royalty" does not include sand and gravel even when the property involved has sand and gravel susceptible of commercial production); *Atwood v. Rodman*, 355 S.W.2d 206 (Tex.Civ.App.1962) (gravel, being unexceptional in character, not considered a mineral

within ordinary meaning); *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994 (1949) (sand and gravel used only for building and roadmaking purposes are not minerals in the ordinary and natural meaning of the word); *Waring v. Foden*, 1 Ch. 276, 86 A.L.R. 969 (Eng.1932) (reservation of "all mines, minerals, and mineral substances" does not include gravel especially where the gravel constitutes a large part of the soil and removal of gravel would deprive the surface owner of the substance of the transaction). *Compare United States v. Harris*, 115 F.2d 343 (5th Cir. 1940) (applying Alabama law) (term "minerals" not limited to metallic substances, and meaning of term to be determined from language of grant of reservation, surrounding circumstances, and intention of grantor, if ascertainable) *with Harper v. Talladega County*, 279 Ala. 365, 185 So.2d 388 (1966) (conveyance of "all the coal, iron ore, and other minerals" does not include common sand and gravel).

nary drafting of legislation which eventually became the Stock-Raising Homestead Act of 1916. It is highly improbable that the Department of the Interior in its drafting of the Act was unaware of its own ruling in *Zimmerman*. Similarly, when enacting the Stock-Raising Homestead Act of 1916, we presume that Congress was aware of the fact that the Department of the Interior had determined that gravel was not a mineral for the purposes of either the mining laws or previous homestead laws. In this regard, we are aware, of course, that in 1929 the Department, in effect, overruled *Zimmerman* and held that gravel was a locatable mineral. *Layman v. Ellis*, 52 Interior Dec. 714 (1929). That, to us, is of no particular significance to the present controversy. The important thing is that as of 1916 the Department of the Interior had held that gravel was not "mineral" and such, we believe, sheds considerable light on the question of the intent of Congress in the enactment of the Stock-Raising Homestead Act of 1916.

Although, as indicated above, there is a contrariety of judicial expression on the question of whether gravel is a mineral, we do find some guidance in the case law. In this regard, our attention has been drawn to one, and only one, Tenth Circuit case involving a patent issued under the Stock-Raising Homestead Act of 1916. *See Skeen v. Lynch*, 48 F.2d 1044 (10th Cir.), *cert. denied*, 284 U.S. 633, 52 S.Ct. 17, 76 L.Ed. 539 (1931). *Skeen* involved a patent issued under that Act, which, as indicated, reserved to the United States "all coal and other minerals." In that case, the Tenth Circuit opined that the *assumption* by the parties that the term "other minerals" included oil and gas was "irrefutable." In *Skeen*, the Tenth Circuit rejected the argument that "coal and other minerals" meant "coal and other material like coal,"—*noscitur a sociis*.

■ In discussing the legislative history of the Stock-Raising Homestead Act, the Court, in *Skeen*, stated that the intent of Congress was to separate the surface estate from the mineral estate, reserving "all of the latter to the United States." We agree with *Skeen* that the mineral estate, and all of it, is reserved to the United States in patents issued under the Act. Such, however, does not tell us just what substances are to be deemed part of the mineral estate. The Court in *Skeen* held, in effect, that oil and gas is a reserved mineral, but, in our view, it does not necessarily follow that gravel also is a reserved mineral. There is considerable difference between oil and gas and ordinary sand and gravel.

Another Tenth Circuit case worthy of mention, even though it did not involve a patent issued under the Stock-Raising Homestead Act, is *Bumpus v. United States*, 325 F.2d 264 (10th Cir. 1963). The *Bumpus* case arose several years after the United States condemned certain land for the purpose of building a reservoir. In the declaration of taking, the United States took the surface estate but reserved to the original owner the subsurface estate, including "all oil, gas and other minerals in and under said land, with full rights of ingress and egress for the purpose of exploration, development, production and removal of oil, gas and other minerals." After the reservoir was constructed, a successor-in-interest to the original owner entered the subject land for the purpose of mining and removing gravel located there. Bumpus claimed the right to remove the gravel, so long as her operation did not impair the operation of the reservoir. Bumpus based her right to enter and remove gravel on the ground that the reservation of oil, gas and "other minerals" included gravel. The United States objected to such entry and sought a writ of assistance. The United States, in *Bumpus*, taking a position contrary to the Government's position in the present case, claimed that the phrase "other minerals" did *not* include gravel.

The trial court in *Bumpus* held that gravel was *not* a mineral reserved to the landowner, reasoning that the gravel was so closely related to the surface that it should be considered a part of the surface estate. On appeal, we affirmed.

In *Bumpus,* unlike *Skeen,* this Court applied the rule of *ejusdem generis* and concluded that gravel was not included within a reservation of "oil, gas and other minerals." Although *Bumpus* did not involve a patent issued under the Stock-Raising Homestead Act of 1916, it nonetheless is supportive of our disposition of the present controversy.

The only other Tenth Circuit case drawn to our attention which relates to our present problem is *United States v. 1,253.14 Acres of Land,* 455 F.2d 1177 (10th Cir. 1972). In that case, the trial court was asked to construe a deed which reserved to the grantor a one-half interest "in all minerals, including oil and gas." The question presented was whether such reservation included gravel. The trial court found the reservation to be ambiguous, sought extrinsic evidence, and, because the grantee failed to meet his burden of proof, held that gravel was a reserved mineral. This Court affirmed. That case, however, does not, in our view, dictate a similar result in the instant case.

*United States v. Union Oil Co.,* 549 F.2d 1271 (9th Cir. 1977), merits comment. That case, like the instant case, and *Skeen,* involved a patent issued under the Stock-Raising Homestead Act. The question there involved was whether the reservation of "coal and other minerals" included geothermal steam. As above mentioned, the Ninth Circuit in that case reviewed, in depth, the legislative intent behind the Act, and concluded that the patentee received title to all rights in the patented land except those reserved to the United States. 549 F.2d at 1273–79. As concerns the scope of the reservation, the Ninth Circuit found that Congress intended to provide homesteaders with a portion of the public domain sufficient to enable them to support their families by raising livestock, but, at the same time, sought to retain governmental control of "unrelated subsurface resources, particularly energy sources, for separate disposition."

Based upon its understanding of congressional intent, the Ninth Circuit in *Union Oil* held that geothermal steam came within the mineral reservation of the Stock-Raising Homestead Act patent. We are in general accord with the Ninth Circuit's analysis of the legislative history of the Act, but we do not believe that such requires a holding that ordinary gravel is included in the mineral reservation. To us, there is a vast difference between geothermal steam and gravel. Gravel is certainly not an unrelated subsurface energy resource.

Illustrative state court cases which are in accord with our holding in the instant case are *State ex rel. State Highway Comm'n v. Trujillo,* 82 N.M. 694, 487 P.2d 122 (1971) and *State Land Bd. v. State Dep't of Fish & Game,* 17 Utah 2d 237, 408 P.2d 707 (1965).

*Trujillo* involved a patent issued pursuant to the Stock-Raising Homestead Act of 1916, and the question was, as here, whether gravel came within the reservation of "all coal and other minerals." [6] The New Mexico Supreme Court held that gravel was not included within the mineral reservation. We recognize that in so holding the New Mexico Supreme Court disapproved certain language appearing in *Skeen v. Lynch,* 48 F.2d 1044 (10th Cir. 1931). Specifically, the *Trujillo* court disagreed with the statement in *Skeen* that, in enacting the Stock-Raising Homestead Act, Congress intended to grant a surface estate and reserve to the United States all of the mineral estate. In our view, the New Mexico court's disagreement with *Skeen* was not essential to the result reached in *Trujillo.* In any event, as above stated, we believe that the result which we have reached in the instant case is not at odds with *Skeen.*

The Utah case above mentioned, *State Land Bd. v. State Dep't of Fish & Game,* involved a conveyance from the State of Utah, which reserved to the state "all coal and other minerals." The question there posed was whether gravel was included

**6.** So far as we are advised, *Trujillo,* and the instant case, are the only reported cases specifically addressing the question of whether grav-

el is a reserved mineral under a patent issued pursuant to the Stock-Raising Homestead Act of 1916.

within such a reservation. The Utah Supreme Court held that gravel was not a reserved mineral. In thus holding, the Utah court made the following comment, which is pertinent to the present controversy:

It is to be conceded that in its broadest sense the term "minerals" would include sand and gravel. In fact under the common cliche that everything is either "animal, vegetable or mineral" the term would include almost all material substances of the earth, its waters and even the air we breathe. But a reflection upon the semantics of words reveals how unsure and varied are the possibilities of their meanings when considered in the abstract; and that in order to divine the true meaning in any given usage it is necessary to look to the context. Further, with respect to the meaning of statutes, it is appropriate to look to the intended purpose and to the means of accomplishing it by the proper application of the language used.

It is advisable to first focus attention upon the subject of the statutory provision, which is "coal and other minerals." Under the well known rules of statutory construction known as ejusdem generis (of the same kind), and noscitur a sociis (know from its associates), the "other minerals" should be understood as something of the same general character as coal or minerals which are usually the subject of prospecting and mining, that is, something more valuable than the land in which they are contained and which are for that reason sought after and extracted from the land by mining, quarrying, or other special means for removal....

Sand and gravel are among the most widely occurring materials in the earth's surface and in fact it is composed almost entirely of them in vast areas. This includes much of the terrain of our Rocky Mountain region in which the land in question is situated. If the statute were so construed as to reserve to the grantor these ordinary materials of the earth's surface, the effect in many instances

would be to completely nullify the grant, which does not comport with reason.

■ All things considered, we believe that it was the intent of Congress that gravel *not* be deemed a reserved mineral in a patent issued pursuant to the Stock-Raising Homestead Act of 1916. Our conclusion finds support from the authorities above cited. In our view, the gravel lying under and upon appellant's land is so closely related to the surface estate, that it is a part and parcel of it. We assume that ordinary rocks and stones are not minerals within the meaning of the patent's mineral reservation. If such common substances were considered to be included within the mineral reservation, then under all the many patents issued pursuant to the Stock-Raising Homestead Act, the patentees would own only the dirt, and little or nothing more. Such would be at odds with the nature of the terrain in the Rocky Mountain region, where rocks abound. And if ordinary rocks are not reserved minerals, it follows that gravel, a form of fragmented rock, also is not a reserved mineral.

Judgment reversed, and cause remanded with directions that the trial court vacate and set aside the decision of the IBLA and remand the matter with direction to dismiss the trespass notice served on Western Nuclear.