708 P.2d 319

**CHAMPLIN PETROLEUM COMPANY, A Delaware Corporation and F. Andrew Grooms, Plaintiffs-Appellees,**

v.

**Patricia H. LYMAN nee Shafer, Defendant-Appellant,**

v.

**ALLSTATE CONSTRUCTION, INC. a New Mexico Corporation, Cross-Defendant-Appellee.**

No. 15847.

Supreme Court of New Mexico.

Oct. 28, 1985.

**408**

Dow, Feezer & Williams, James L. Dow, Carlsbad, for defendant-appellant.

Jennings & Christy, James T. Jennings, Roswell, for plaintiffs-appellees.

## OPINION

WALTERS, Justice.

We accepted certification from the Court of Appeals on the question whether caliche is a mineral reserved to the United States under the Stock-Raising Homestead Act of 1916, 39 Stat. 862 (1916) (SRHA), and particularly under 43 U.S.C. § 299 (1982) of that Act. We determine that caliche is such a mineral.

This controversy arose when plaintiff Champlin Petroleum Company (Champlin) commenced road-building and caliche removal activities pursuant to an easement over the land of defendant Patricia H. Lyman nee Shafer (Shafer). The pleadings would indicate that Shafer owns the land pursuant to an SRHA patent, which contains a reservation to the United States of "coal and other minerals." Other claims and parties are not relevant to this certification. The trial court granted summary judgment to Champlin, permanently enjoining Shafer from interfering with Champlin's easement. The court further determined that, as a matter of law, caliche is a mineral reserved to the United States under the SRHA and thus Shafer was not entitled to compensation for its removal. Shafer appealed to the court of appeals, disputing (among other issues) the caliche question. The court of appeals certified the caliche question to us in accordance with *State v. Manzanares*, 100 N.M. 621, 674 P.2d 511 (1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 2123, 85 L.Ed.2d 487 (1985).

We have never specifically decided whether caliche is a reserved mineral under the SRHA. In *State ex rel. State Highway Commission v. Trujillo*, 82 N.M. 694, 487 P.2d 122 (1971), we held that monzonite rock, which was taken in its exposed state, having no exceptional character or special value, and useful only as gravel for road-building purposes, was not intended to be reserved to the United States under the SRHA. We ordered that the surface estate owners in that case be compensated for the removal of that rock. By contrast, in the recent case of *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983), the United States Supreme Court held that gravel found in SRHA lands is a mineral reserved to the United States under the Act.

We noted, in *Trujillo*, the parties' stipulation that the disputed material (monzonite) was " 'used (as gravel) as an aggregate for coarse and surfacing materials for highway construction.' " 82 N.M. at 695, 487 P.2d at 123. The Supreme Court in

*Western Nuclear* interpreted *Trujillo* as a decision concerning gravel and as reaching a result opposite to its conclusion in *Western Nuclear*, 462 U.S. at 42, n. 4, 103 S.Ct. at 2222 n. 4. The gravel in *Western Nuclear* was used mainly to pave and surface roads; under the *Trujillo* analysis, such material would not be reserved to the United States. Because the determination of the current applicability of *Trujillo* in light of *Western Nuclear* lies properly with this court, the court of appeals correctly certified the caliche question to us. *State v. Manzanares.*

The law is unsettled as to whether caliche, specifically, is a reserved mineral under certain federal patents. *Poverty Flats Land & Cattle Co. v. United States,* 706 F.2d 1078 (10th Cir.1983). Noting the imprecise nature of the term "minerals," the court in *Western Nuclear* interpreted the mineral reservation in the SRHA to include "substances that are mineral in character * * * that can be removed from the soil, that can be used for commercial purposes, and that there is no reason to suppose were intended to be included in the surface estate." 462 U.S. at 53, 103 S.Ct. at 2228. In *Trujillo* we construed the reservation more narrowly, implying that "minerals" (in that the material was neither "animal" nor "vegetable") commonly looked upon as dirt or rock, and useful only for road-building or such related purposes, were not intended to be reserved. *Western Nuclear,* at 53–54, 103 S.Ct. at 2228–2229, focusing on the severability and marketability of minerals, held that road-building materials, including gravel, are included in the mineral reservation: "This interpretation of the mineral reservation best serves the congressional purpose of encouraging the concurrent development of both surface and subsurface resources, for ranching and farming do not ordinarily entail the extraction of mineral substances that can be taken from the soil and that have separate value."

This court has regarded caliche, in a general way, as a mineral similar to sand, gravel, clay, and limestone. *Board of County Commissioners v. Good,* 44 N.M. 495, 498–499, 105 P.2d 470, 472 (1940). Although caliche displays none of the exceptional characteristics which *Trujillo* attaches to reserved minerals, and although we are not provided with much information regarding the nature of caliche, we must assume from the posture of this case that this material is both severable and marketable for road-building or other purposes. As we read *Western Nuclear,* we have no doubt that the Supreme Court would classify caliche as a reserved mineral. We, of course, must adopt the classification that the majority of the Supreme Court has accorded to the meaning of a federal act, even though we may share the reservations of the dissenters that the majority's definition of a reserved mineral may be overly broad. 462 U.S. at 60–72, 103 S.Ct. at 2232–2238. *See also Millsap v. Andrus,* 717 F.2d 1326 (10th Cir.1983) (regarding limestone and dolomite as reserved minerals under a different federal act, but citing *Western Nuclear*).

Although we have said above that we must follow the Supreme Court's interpretation, and the parties to this appeal have pointed out the seemingly obvious conflicts in state and federal interpretations of the SRHA, none have favored us with any assistance whatever in researching or citing any cases addressing that issue. The decision in *Western Nuclear* represents the interpretation of a federal statute by the highest court in the land. We first note that matters concerning federal public lands in New Mexico are not exclusively within federal jurisdiction, at the same time recognizing that federal legislation respecting those lands necessarily overrides any conflicting state legislation. *Kleppe v. New Mexico,* 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976) (citing Property Clause, U.S. Const. art. IV, § 3 and Supremacy Clause, U.S. Const. art. VI). *See also Palmore v. United States,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973) (stating in dicta that state courts are appropriate forums for federal questions); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) (federal system

allows state courts to enforce rights created by federal law).

Likewise, state court interpretations of federal legislation are subject to United States Supreme Court review. *See* U.S. Const. art. III, § 2 (Supreme Court appellate jurisdiction); U.S. Const. art. VI (Supremacy Clause); 28 U.S.C. § 1257 (1982) (federal question jurisdiction). *See also Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478 n. 4, 101 S.Ct. 2870, 2875 n. 4, 69 L.Ed.2d 784 (1981) (stating in dicta that state courts stand ready to vindicate federal rights subject to Supreme Court review); *Courtney,* 368 U.S. at 514, 82 S.Ct. at 526 (one of Supreme Court's traditional functions is to resolve conflicts not only among the federal circuits, but among state courts applying federal law in areas of concurrent jurisdiction); Cullison, *State Courts, State Law, and Concurrent Jurisdiction of Federal Questions,* 48 Iowa L.Rev. 230, 242–247 (1963) (supremacy of federal law and federal interpretations thereof). *Cf. Webb v. Webb,* 451 U.S. 493, 101 S.Ct. 1889, 68 L.Ed.2d 392 (1981) (prerequisites to Supreme Court review of a state supreme court decision on a federal claim cited); *Local 721, United Packinghouse Food & Allied Workers v. Needham Packing Co.,* 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964) (state court exercising its concurrent jurisdiction over certain federal claims must apply federal substantive law as expressed by most recent Supreme Court case); *Reconstruction Finance Corp. v. Beaver County,* 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946) (although interpretation of state law by highest state court binds Supreme Court, scope of and congressional intent behind term used in federal statute is a federal question for Supreme Court to decide); *Holguin v. Elephant Butte Irrigation District,* 91 N.M. 398, 575 P.2d 88 (1977) (citing with approval *Yellen v. Hickel,* 352 F.Supp. 1300 (S.D.Cal.1972), holding that state court's interpretation of a federal statute, which is a federal question, is not binding on federal courts).

In general, Congress intends that its laws shall operate uniformly throughout the United States, unimpaired by differences in state laws or state court decisions. *Reconstruction Finance Corp.* The Supreme Court granted certiorari in *Western Nuclear* "[i]n view of the importance of the case to the administration of the more than 33 million acres of land patented under the SRHA."

To the extent, then, that *Trujillo* conflicts with *Western Nuclear,* it is overruled. We hold that caliche is a mineral reserved to the United States under the SRHA and, consequently, that Shafer is not entitled to be compensated for its removal.

This matter is remanded to the Court of Appeals for consideration of the other matters presented in the appeal.

FEDERICI, C.J., SOSA, Senior Justice and RIORDAN and STOWERS, JJ., concur.